## WILSON v. McLERNAN.

I. Per DILLON, J., all the Judges concurring.

1. **Swamp land: PREËMPTION.** Sham improvements made for the purpose of acquiring title to swamp lands without actual settlement will not support a valid preëmption.

## II. Per DILLON, J., WRIGHT, J., concurring.

2. —— NUMBER OF ACRES: SITUATION: SALE OF PREËMPTION. One settlement or improvement cannot be made available for more than one hundred and sixty acres in all, and this must be in one body, except that it may be situate in two distinct tracts when one is timber. After a preëmption is established by improvements upon one tract the preëmptor may sell and convey his preëmption right to any one of the tracts embraced in his preëmption.

III. Per COLE, J., LOWE, Ch. J., concurring.

3. —— SALE OF PREËMPTION. The right to sell and dispose of a preëmption claim, as given by statute, does not extend to sales of distinct portions of such claim upon which no improvements have been made; such sale confers no right whatever upon the purchaser, except as it relieves the land from the prior preëmption. He may, however, sell his preëmption claim entire, and transfer his improvements and possession to the purchaser, who will thereby become invested with all the rights of an original preëmptor.

*Appeal from Page District Court.*

TUESDAY, JANUARY 26.

THE following is conceded by counsel to be a correct statement of the cause:

This action is brought by Joshua S. Wilson against David McLernon and Mary McLernon, his wife (whose name before marriage was Mary Nixon), to compel the defendant to convey to plaintiffs the northwest quarter of the northwest quarter of section number twenty (No. 20), township No. 67 of range No. 36 in Page county, Iowa. The plaintiff alleges that one of the defendants had obtained from the county judge of Page county, Iowa, a certificate of preëmption upon the land in controversy, it being swamp land, belonging to Page county, and that by virtue of said certificate of preëmption defendants obtained and procured a deed to this tract of land from said county. Plaintiff further alleges that he, himself, had a certificate of preëmption on the same tract of land, by virtue of which he was entitled to a deed thereto from Page county, and that the certificate of preëmption, under which defendants held the land, and by virtue of which they had obtained their deed, was by them obtained by fraud; and that therefore their deed was fraudulently obtained and void, and that by reason of them so obtaining a deed to said land, plaintiff was prevented from acquiring a title thereto. On the other hand, while defendants admit that the land is swamp land and that it did belong to Page

county, they contend that the preëmption made by Mary Nixon, now Mary McLernan, one of the defendants, was *bona fide;* that the title to the land was by them acquired in good faith before any right or pretended right of plaintiff had accrued; and defendants allege that the certificate under which plaintiff claims, was by him obtained by fraud; that it was illegally issued, is void, and confers no title whatever. By the issue made in the case, the validity of both certificates is called in question. To pass upon the merits of the different certificates, and indeed upon the merits of the case, it seems necessary to understand the situation of the land in dispute, which can be done by reference to the annexed diagram:

Sections 17, 18, 19 and 20, in town 67 north, range 36 west.

D, indicates the land concerning which this suit is brought; M, the land included in the certificate of defendants; W, the land included in the certificate of plaintiff; B, the land preëmpted by Bales; BC, the land which Bales sold to Comforth; and BW, the land which Bales sold to plaintiff, Wilson.

His petition having, upon the hearing, been dismissed, the plaintiff appeals. The cause was tried according to the first method for the trial of equitable causes. All of the testimony was before the Supreme Court.

*J. A. Harvey* and *N. B. Moore* for the plaintiff.

*Robt. Percival* for the defendants.

DILLON, J. — From the evidence I find the following facts with reference to the 40 acres (N. W. $\frac{1}{4}$ 20 T. 67, R. 36) in dispute.

I. On the 7th day of March, 1855, for this forty, with two others lying east of and adjoining it, Mary Nixon (now McLernan) obtained from John Wilson, county judge, a certificate of preëmption under the swamp land act.

She did not at the time live upon any of the land thus preëmpted and never has. That is, she was not and is not a *settler* upon it. Now had she a *bona fide* claim by actual *improvement* upon the land? Rev., §§ 973, 977. Her improvements prior to the certificate of preëmption were colorable, sham, not *bona fide*, not within the requirements of the act as construed by this court. *Givens* v. *Decatur Co.*, 9 Iowa, 280. Those which have been made since have been made by others for *their* benefit and were of a temporary character, such as a hog pen and feed lot. The mill built by Seabolt was built for himself long after the certificate of preëmption to Mary Nixon, and none of these were upon the forty in dispute.

II. On the 4th day of December, 1855, one Knight also obtained a certificate of preëmption to the forty in dispute and other tracts. This was also fraudulent, he having neither settled upon nor substantially improved the lands. There is a dispute about this certificate. It is in evidence, and on the back of it contains an assignment by Knight, written by John Wilson, county judge, to T. P. Nixon, a brother of Mary Nixon (the county judge being a brother of the plaintiff), dated June 28, 1856. T. P. Nixon claims and testifies that he bought Knight's interest in the forty in dispute, and received this assignment, with the consent of the county judge. On the other hand, one Griffy (whose statements are, however, not very positive) claims that Knight sold him his (Knight's) certificate, and that he afterwards sold his interest thereby obtained to the plaintiff. But he admits that he let Nixon have the certificate. The plaintiff's right is not strengthened by any interest he obtained from Griffy, or under the Knight certificate: 1st. Because this certificate is not *bona fide;* 2d. Because T. P. Nixon, rather than the plaintiff, is the assignee of it, if it were valid.

III. On the same day and at the same time that Mary Nixon obtained her certificate, viz., March 7, 1855 (see finding No. 1 above), one Bales obtained a certificate of preëmption for one hundred and sixty acres of swamp land, the largest quantity one man can preëmpt, he being an actual settler with improvements. The land he preempted was the E. ½ of the S. E. ¼ of 18, on the north forty of which was his house, and a few (eight) acres broke containing eighty acres; forty acres in section 19, and adjoining the tract above described, and it may be remarked, west of and adjoining the forty acres in dispute; and a detached forty acres of timber in another part of section 18 (the S. E. ¼ of S. W. ¼ 18). Bales never made any claim to the forty acres in dispute, and was present

when Mary Nixon obtained her preëmption certificate therefor. In December, 1855, before plaintiff came to the country, Bales, for $100 in cash, sold his interest in the timber forty and the forty in section 19 to one Comforth, and assigned him his entire certificate, covering, as we have seen, one hundred and sixty acres, taking back, however, from Comforth, a bond that he would reconvey him the eighty not sold by Bales to him, and afterwards sold by Bales to the plaintiff.

On the 10th or 15th day of July, 1856, the plaintiff bought of Bales the eighty acres (E. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ 18), sold by Bales to Comforth, for $550, and Bales put the plaintiff in possession.

The plaintiff claims that he also bought the forty in section 19 of Bales; but here the weight of evidence is against him; at least this claim is not satisfactorily sustained.

On the 28th day of July, 1856, Comforth goes to the county judge (Wilson), and "by agreement with Bales," surrenders the Bales certificate to the county judge, and *receives a new one* for his, Comforth's two forties; viz. : the timber forty in section 18, and the forty in 19 which adjoins the land in dispute on the west, and Bales gave him (C) up his bond for the other eighty, viz. : the eighty sold a few days before by Bales to the plaintiff. *Bales had no improvement upon any but the one forty above named and upon which he lived.* Afterwards, Comforth obtained a deed for the timber forty in section 18, but finding that Wilson (the plaintiff) made a claim on the forty in section 19, and not regarding the land as "worth contending for," he never obtained a deed for the forty in section 19. The plaintiff afterwards obtained from the county, a deed for the one hundred and twenty acres.

IV. On the 5th day of August, 1856, the county judge granted to his brother, the plaintiff, a certificate of pre-

emption for the eighty acres he had bought of Bales, and for the forty acres in section 19. This was granted *ex parte, without evidence, and, as claimed, upon the personal knowledge of the judge, and professes to revoke all former certificates.* The plaintiff made improvements on the forty in section 19, and afterwards obtained, as above stated, a deed for it, and also for the eighty acres bought of Bales, making one hundred and twenty in all. By virtue of these improvements, and of his actual settlement on the land bought of Bales, he claims an additional forty, viz., the tract in dispute. At the time (August 5, 1856) the plaintiff obtained his certificate of preëmption, he had made no improvements in addition to those made by Bales, and there was no settlement or improvement upon the forty acres in section 19. It does not satisfactorily appear that the plaintiff had made any improvements upon the forty acres in section 19, *at the time* (October 31, 1859) *that the defendant paid the county* for the land in dispute, and received therefrom a deed for the same.

*Conclusions of law:*

I. The Knight certificate may be laid out of the case, as having no material bearing upon it. Knight was not a <span>1. SWAMP LAND: preemption.</span> *settler* upon any of the land mentioned in his certificate. His only improvements consisted of a "foundation of poles cut and laid on the land." It was evidently a sham or speculative preëmption, and the plaintiff's counsel concedes that it does not substantially strengthen the plaintiff's case, even if the plaintiff were to be regarded as the assignee thereof.

II. One settlement or improvement cannot be available <span>2. —— number of acres: situation: sale of preemption.</span> to preëmpt more than one hundred and sixty acres in all. This must be in a body, except it may be situated in two distinct tracts, if one is timber. (Rev., §§ 973, 974.)

Bales was an actual settler, and made *bona fide* improve-

ments upon one forty of prairie. He claimed two other forties of prairie, south of and adjoining the one on which he lived, and one detached forty of timber, and he thus preëmpted the largest amount allowed by law, and received his certificate accordingly. He sold, as the law allowed to be done (Rev., § 973), the detached timber tract and the south forty (the one in section 19) to Comforth, and the other two forties (E. ½ of S. E. ¼, 18,) to the plaintiff. The old certificate to Bales was surrendered to the county judge, who issued a new one to Comforth for his two forties, and afterwards a new one to the plaintiff, including in it one of the forties (the one in section 19), which was contained in the Comforth certificate. Bales did not, as argued by the plaintiff's counsel, rescind or cancel his contract with the county, but claimed and received the benefit of it. Comforth, by virtue of the new certificates, afterwards entered and received a deed for the detached timber tract. This was not settled upon or improved, and it could have been preëmpted by him only by virtue of Bales' improvement upon the prairie forty.

The plaintiff, by virtue of his purchase from Bales, and not otherwise, obtained possession of Bales' improvements, and acquired Bales' rights. He was the assignee of Bales, just as fully, just as essentially, just as really, as if he had received an assignment of Bales' certificate. Bales could not claim the forty acres, now in dispute, because he had one hundred and sixty acres preëmpted without it. If the plaintiff is Bales' assignee, he can, as such, claim no greater rights in this respect than his assignor could have done. Plaintiff claims that he bought one hundred and twenty acres of Bales (aside from Comforth's forty acres of timber) and has entered and received a deed for the same; this, with the forty acres entered by Comforth, as above stated, makes the *maximum* amount, without allowing him to take the land in dispute.

The defendants paid the county for the land obtained by deed, in October, 1859; and this gives them a good title, provided, it did not operate as a fraud upon the plaintiff's rights. If the plaintiff is the assignee of Bales, the act of the defendants, in entering the land, did not defraud or injure him. If the plaintiff is not the assignee of Bales, then he must claim a right to preëmpt the forty in dispute, by virtue of settlement or distinct improvements made upon the forty in section 19, or by virtue of the settlement and improvements made by Bales on the other eighty. As the assignee of Bales, the plaintiff had no right to preëmpt the tract in dispute. This his counsel concede. And it seems to be equally clear, that he could not preëmpt the tract in controversy by settling on and putting additional improvements upon the eighty acres which Bales had already improved, and by virtue of which he had received a certificate of preëmption for the maximum amount, one hundred and sixty acres, allowed by law.

The plaintiff does not satisfactorily show that he improved the forty in section 19, before the defendants paid the county for the land in dispute, and received their deed. The testimony leaves this question uncertain. At the time the plaintiff obtained his certificate (August 5th), he had made no improvements beyond those made by Bales, his vendor. The forty in dispute has never been *settted* upon by any of the numerous certificate holders. It is yet vacant. It has never been actually and substantially improved. If the plaintiff can claim it, it must be by virtue of his settlement and improvement upon other land. And it seems to my mind perfectly clear, that the plaintiff cannot base a right to preëmpt the forty in dispute, upon improvements which he made on section 19, *after* the defendants had paid the county for the land, and received a deed for the same.

If he can, where is the limit to his right? Can he not,

on the same principle, take, besides that in dispute, *two other forties?*

When the plaintiff wants the land that Bates preëmpted, the plaintiff is willing to be regarded as Bates' assignee. When he wants to get other and greater rights than he purchased of Bates, and other and greater than he can secure as assignee of Bates, then he is not willing to be regarded as his assignee.

We see nothing in the origin of the plaintiff's claim in the forty acres in section 19 (which is essential to the plaintiff's claim on the tract in dispute in order to make the tract he claims join), or in the movable or ambulatory nature of the rights which he claims, capable of extension in any direction, and in one direction as well as another, that persuades us that we ought to divest in his favor the title which is in another.

WRIGHT, J., concurs in the foregoing opinion by DILLON, J.

COLE, J. — I do not differ materially with the finding of facts as made by Judge DILLON, nor with the first

3. —— sale of pre-emp-tion. conclusion of law. But at the second conclusion of law, as stated, we part. In my view, the right to sell and dispose of a preëmption claim, as given by statute, does not extend to the sale of distinct portions of such claim upon which *no improvements* have been made; that such sale confers no right whatever upon the purchaser, except as it relieves the land from the prior preëmption and enables such purchaser to make improvements thereon and preëmpt it for himself. He may, however, sell his preëmption claim entire, and transfer his possession and improvements to the purchaser, who will thereby become invested with all the rights of the

original preëmptor. This, in my view, is the extent of the statutory right to sell and convey a preëmption.

But in this case, after the sale by Bales to Comforth and the plaintiff Wilson, the original certificate of preemption to Bales was *surrendered* by the parties with the consent of and to the county judge. That certificate was then *functus officio*, and neither party then held their preëmption as assignee of Bales. Wilson, however, having purchased Bales' improvements, and being in possession of them, and no certificate of preëmption being then outstanding upon any of the lands, he had the right, upon proper proof to, or by the actual knowledge of (which is the purpose of proof), the county judge, as to the improvements, to preëmpt for himself one hundred and sixty acres of land. This proof was made or knowledge had, and a certificate duly issued to the plaintiff, Wilson, for the four forties; upon one of the four forties thus preëmpted, there was an outstanding certificate to Mary Nixon, but which we *agree* in holding to have been obtained by sham improvements and improperly issued.

Now, shall the plaintiff, Wilson, lose the benefit of his preëmption thus made, upon the valuable and good-faith improvements owned by him and made for him (since he had paid for them), because Comforth had obtained a deed for forty acres originally preëmpted by Bales, but the certificate surrendered, and the new one issued to Comforth without any improvements or proof thereof? In other words, can the fact that Comforth, after the surrender of the original certificate to Bales, improperly and illegally obtained a new certificate and afterwards a deed, be used to defeat a legal certificate, properly issued to Wilson? In my view, such a holding is, in effect, sanctifying a wrongful and illegal act, for the purpose of defeating a rightful and legal claim.

It is agreed by us that the plaintiff is the owner and

possessor of the only good faith and valuable improvement made by any of the claimants upon any of the land in question; and in my view of the evidence, he himself made considerable and valuable improvements, besides those made by Bales, on the forty in section 19 adjoining the forty in dispute, *before* the defendants, McLernan, obtained their deed. It becomes, therefore, a question whether we shall liberally construe so as to extend the benefit of the preëmption laws to the owner, maker and possessor of valuable improvements made in good faith, or shall, by a forced and technical construction, effectuate and perfect a merely colorable, sham and illegal claim. I not only *prefer* the former, but in the view which I entertain of the law, I cannot yield my consent to any other exposition of it. I think the judgment should be reversed.

Lowe, J., concurs in the foregoing views of Cole, J.

Per Curiam. — The judgment of the District Court stands affirmed by operation of law, the judges being equally divided in opinion.

Affirmed.