## MEINHARD BROS. & CO. v. STRICKLAND.

1. An insolvent debtor may prefer a creditor by *bona fide* mortgages, if they are intended merely as securities, but if such mortgages are really designed to operate as the means of transferring the debtor's property to one or more of his creditors in preference of others, then they must be regarded as in effect, though not in form, an assignment, and null and void, because within the mischief inhibited by section 2014, General Statutes.  It involves mainly a question of fact—the intention of the parties.

2. Where mortgages were executed by an insolvent debtor on his entire stock of goods to his wife and another creditor, payable on demand and thereby anticipating debts not maturing for one and two years, and these mortgages were almost instantly foreclosed—this court concurred with the Circuit Judge that these mortgages were given for the purpose of enabling favored creditors to close up speedily the debtor's business and obtain the first fruits of the sale of his property, and therefore were a device to evade the provisions of the assignment act.

3. Matters not brought to the attention of the court below, cannot properly be brought here for review.

4. Admissions in an answer are sufficient legal evidence on a motion for injunction and the appointment of a receiver.

5. In action assailing a deed of assignment or instruments which in legal effect are an assignment, the creditor is not required first to obtain judgment and return of *nulla bona* thereon.

6. A Circuit Judge may, in his discretion, dispense with security on an injunction bond.

7. Security for costs should not be required of a non-resident plaintiff, except upon application on due notice.

8. Mortgagees under invalid instruments are not owners of the chattels purported to be mortgaged.

9. An exception in the words "that his honor erred in not dismissing the proceedings" is too general to be considered.

Before KERSHAW, J., Kershaw, April, 1888.

The opinion fully states the case.

*Mr. J. T. Hay*, for appellants.

*Messrs. W. M. Shannon* and *W. D. Trantham*, contra.

October 29, 1888.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.  On the 21st of March, 1888, the appellant, C. H. Strickland, a merchant of the town of Camden, South Carolina, being at the time in the city of New York, executed a mortgage in favor of his wife, the appellant, Teresa H. Strickland, "upon all of his stock of goods in his store in the town of Camden, S. C., together with the fixtures, &c.,[1] and other credits pertaining to his business, to secure the payment, on demand, of the sum of forty-seven hundred dollars, alleging in said mortgage that the property therein described was worth the sum of twenty-eight thousand dollars."  On the 23rd of March, 1888, the said C. H. Strickland, being still in New York, executed a second mortgage in favor of the appellant, S. A. Arnstein, upon the same stock of goods to secure the payment, on demand, of two notes, both bearing date 23rd of March, 1888— one for the sum of $6,014.36, and the other for the sum of $475.

Immediately thereafter Strickland and wife, accompanied by Arnstein, left New York and arrived in Camden on the 26th of March, 1888, and on the 28th of March, 1888, the stock of goods covered by these mortgages was surrendered by C. H. Strickland to the defendant, Haile, as agent of the mortgagees, who took possession and advertised the same for sale on the 16th of April, 1888, under said mortgages.  On the same day of the surrender of the goods, C. H. Strickland and Arnstein left the State together, and on the following day Mrs. Strickland also left Camden; C. H. Strickland alleging that he left to seek for employment elsewhere, and that his wife left to visit her mother in Anderson, while Arnstein says that he returned to his home in the city of New York, visiting Knoxville, Tenn., on his way home.

On the 27th of March, 1888, the day before the surrender of the goods, it is admitted that Strickland and wife took goods from the store to the amount of about $125, which defendants claim were charged to Strickland on the books of the store, which were carried to the residence of Strickland, where they were at the time the goods in the store were taken possession of by the agent

---

[1] It is charged in the complaint that this property with his choses in action constituted all the property of the debtor.  This is denied in the answers.  There is no testimony upon this point to be found in the "Case," but the insolvency of the debtor seems to be conceded.—REPORTER.

of the mortgagees, and where they still remain, as defendants allege.    It is also admitted that about the same time, probably on the same day, C. H. Strickland transferred to Springs, Heath & Co., accounts due to him "for about $2,000, to secure them for about $1,300, money advanced by them to defendant in the conduct of his business, which said accounts are not worth more than the amount due Springs, Heath & Co."

It is alleged on behalf of the defendants that the consideration of the mortgage to Mrs. Strickland was money loaned by her at previous times to her husband, which she had derived from the estates of her deceased father and brother; and that the consideration of the mortgage to Arnstein was two notes, the larger of which was to take up three notes given by Strickland to Arnstein on the 1st of January, 1887, payable respectively in one, two, and three years, for the interest of Arnstein in a partnership which had previously existed between himself and C. H. Strickland, which was dissolved on the 1st of January, 1887; and that the smaller note ($475) was given for money advanced by Arnstein to C. H. Strickland during his last visit to New York, when the mortgages were executed, "to enable him to meet some of his liabilities and to return home."

On the 7th of April, 1888, this action was commenced to enjoin the sale under the mortgages; to have the same declared null and void, as in violation of the assignment act, and for the appointment of a receiver, &c.    The motion for an injunction and the appointment of a receiver was heard by his honor, Judge Kershaw, upon the complaint and answers of the several defendants, together with affidavits submitted on both sides, and on the 21st April, 1888, he rendered his decree, in which he says: "The motion was elaborately argued by counsel on both sides. After due consideration of the authorities from *Wilks* v. *Walker* and *Austin* v. *Morris* to *Mayovern & Co.* v. *Richard and others*, and *Pool* v. *Hunt* [probably a misprint for *Lamar* v. *Pool*], I am constrained to hold the proceedings and conduct of C. H. Strickland in regard to his property and assets as accomplishing the identical results usually obtained by a general assignment for the benefit of creditors with preferences, though mortgages and specific assignments of portions of his property to individual credit-

ors have been employed for that purpose. All these transactions were accomplished within a very few days, and must be considered as constituting a scheme for the purpose of closing his business on the part of C. H. Strickland, and not done in the course of business, and for the purpose or with a view of continuing the same, and the advantages secured to certain of the creditors to the exclusion of many others, accomplishes the very result which it was the object of the assignment act, as said in *Magovern & Co.* v. *Richard*, to 'cut up root and branch.' To sustain these transactions would be entirely to defeat the purposes of the statute. A person cannot be permitted to accomplish a result by indirect and evasive measures which the law expressly forbids—certainly not in a Court of Equity." He therefore rendered judgment granting an order for injunction and for the appointment of receivers, enjoining all creditors from suing, and calling them in to prove their demands. The plaintiffs were required to enter into the usual injunction bond in the sum of one thousand dollars, without security; and it was also ordered, "That the plaintiffs have leave to make as additional parties defendant hereto, by proper amendments and service of summons, Springs, Heath & Co., who are said to be in possession of a portion of the assets of said C. H. Strickland."

From this judgment defendants appeal upon the following grounds:

"1. That his honor erred in not deciding that the verification of the complaint herein was insufficient in law.

"2. That his honor erred in not deciding that the plaintiffs not having any legal evidence, by affidavit, sworn complaint, or otherwise, upon which the rule to show cause could be based, that the complaint, rule to show cause, and all proceedings thereunder should be dismissed.

"3. That his honor erred in not deciding that he was without jurisdiction to hear the cause and grant relief, it not appearing that the plaintiffs had recovered judgment, or exhausted their legal remedies.

"4. That his honor erred in holding that the transactions between C. H. Strickland and the creditors to whom he gave secu-

rity for their debts, amounted to a general assignment for the benefit of creditors with preferences.

"5. That his honor erred in not deciding that the plaintiffs had not furnished any legal evidence as to the allegations of their complaint as to the indebtedness of C. H. Strickland, his alleged insolvency, any mortgages or transfers executed by him to any of his creditors, and other matters upon which the rule to show cause and the order thereon of his honor is based.

"6. That his honor erred in not deciding that Springs, Heath & Co. and others, to whom it was alleged in complaint that C. H. Strickland had transferred and assigned choses in action, were necessary parties to the proceedings herein, and in not dismissing the proceedings herein because they were not made parties.

"7. That his honor erred in not requiring the plaintiffs to give security on injunction, the plaintiffs not being citizens of this State, and the rules of court requiring that non-resident plaintiffs should give security.

"8. That his honor erred in granting an injunction and appointing a receiver in this cause, he being without jurisdiction in the premises, and there being no legal evidence before him to sustain his rulings.

"9. That his honor erred in not dismissing the proceedings herein."

Instead of taking up these grounds in regular consecutive order, we will proceed first to consider the question raised by the fourth ground, which seems to be regarded by counsel as the most material, leaving the other grounds to be considered hereafter. That question has been before this court in various forms on several recent occasions, and the principles upon which it is to be determined, as it seems to us, ought now to be regarded as settled. From the case of *Wilks* v. *Walker* (22 S. C., 108), decided 6th January, 1885, down to the case of *Magovern & Co.* v. *Richard* (27 S. C., 272), decided 20th September, 1887, this court has uniformly held that while an insolvent debtor may by *bona fide* mortgages, intended merely as securities, give a preference to one or more of his creditors, yet if such mortgages are really designed to operate not merely as securities, but as the means of transferring his property to one or more of his credit-

ors in preference of others, then they must be regarded in effect, though not in form, an assignment, and coming within the mischief intended to be suppressed by section 2014, General Statutes, must be declared null and void.

As it is well expressed by the Chief Justice in *Lamar* v. *Pool*, 26 S. C., at pages 445–6: "That it is not absolutely necessary for a paper to be in the form of a general assignment for the benefit of creditors, in which a preference is given, to render it void under section 2014, General Statutes, but that any papers, whether single or more than one, connected with each other, operating as an assignment and *intended* to give a preference, shall have that effect. In other words, any attempted evasion of the act in form, while the end prohibited is accomplished, though not in violation of the terms of the act, is yet a violation of its spirit, and therefore as violative of the act as though contrary to its express terms in form." Or, as is said by Mr. Justice McGowan, in *Austin* v. *Morris*, 23 S. C., at page 405: "It is said, however, that there was no assignment, but, on the contrary, mortgages which the party might legally make. This may be so, if the papers were genuine mortgages, executed *bona fide* for the purpose of securing certain debts. But if they were put in that form as a mere device to evade the law—if the transaction was in fact a transfer of the whole property in payment of certain claims to the exclusion of all others—if the instruments in effect accomplished, and were intended to accomplish, the very purpose of an assignment under another name—should the transaction in the form assumed receive the sanction of the court and be enforced as such? It seems to us that the court cannot sustain an evasion of that kind simply for the reason that the parties did not call it an assignment."

It is plain, then, that in cases of this kind, the question is mainly one of fact as to the *intention* of the parties. If the instruments employed were *bona fide* intended merely as security, and not as a means of evading the provisions of the assignment act, then they do not fall within the purview of that act. But if, on the contrary, the instruments resorted to, *whatever may be their form*, were intended, not merely as security, but as a means of transferring the debtor's property to the favored creditor to

the exclusion of others with a view to evade the provisions of the assignment act, then they must be regarded as null and void under the provisions of that act. As is said by the Chief Justice in *Lamar* v. *Pool, supra:* "In all of these cases where the instrument assailed as contrary to section 2014, does not in its form violate that section, having ear-marks that cannot be mistaken, the question must hinge upon the intent of the parties. Is the paper a *bona fide* mortgage, intended as a security, which the law allows? Or was it intended as an assignment, in which the particular creditor is preferred, the form of the paper having been adopted to evade the act? This question in such a case becomes a question of fact.

Accordingly, we find that the cases of *Verner* v. *McGhee* (26 S. C., 248), *Lamar* v. *Pool, supra,* and *Magovern & Co.* v. *Richard, supra,* relied on by counsel for appellants, as shaking, or at least qualifying, the doctrine of the previous cases, all turned upon this question of fact, and so far from qualifying or limiting any of the previous cases, expressly recognise their authority. In *Verner* v. *McGhee,* the Circuit Judge found as matter of fact that the purchase of the goods of the debtor by the creditor, McGhee, there sought to be impeached, was a *bona fide* transaction, and *not* intended in evasion of the assignment act, and this court affirmed that finding of fact, saying that the case was not analogous to either *Wilks* v. *Walker* or *Austin* v. *Morris,* because in those cases the fact was found to be exactly otherwise. In *Lamar* v. *Pool* the Circuit Judge found as matter of fact that the mortgage there questioned was intended as a *bona fide* security merely, and *not* as a means of evading the assignment act, which finding of fact was affirmed by this court, and the decision turned upon that fact, and the cases of *Wilks* v. *Walker* and *Austin* v. *Morris* were expressly recognized.

So also, the decision in *Magovern & Co.* v. *Richard* rested entirely upon the fact that the mortgage given by Richard to Bollmann was an ordinary mortgage intended merely as a security and not as a device to evade the provisions of the assignment act. All that was said in that case in regard to the cases of *Wilks* v. *Walker,* and *Austin* v. *Morris* was, what we say here, that those cases did not touch the doctrine which had been expressly con-

32

ceded in the latter case, that a debtor might, by an ordinary mortgage, intended *bona fide* as a security merely, prefer one creditor over another.    The difference between the two things is obvious.    A debtor, in embarrassed circumstances, may give a mortgage to one or more of his creditors for the honest purposes of security merely, because he may thereby obtain time, or perhaps, as in *Magovern & Co.* v. *Richard*, further advances whereby he may be enabled to work out his difficulties and be enabled to pay all of his creditors; but where the mortgage is given with no such view, but, on the contrary, for the purpose of enabling the favored creditor to close up his business speedily and obtain the first fruits of the proceeds of the sale of the debtor's property, the transaction cannot well be regarded as anything other than a device to evade the provisions of the assignment act, as it is, in effect, though not in form, an assignment of his property for the benefit of one creditor to the exclusion of others; and this the law forbids.

It seems to us, therefore, that Judge Kershaw took the correct view of the law, and the only remaining question, on this branch of the case, is whether he erred in his finding of fact.    Under the well settled rule we will not interfere with such finding unless it is without any testimony to support it, or is manifestly against the weight of the testimony.    It certainly cannot be said that there is no testimony to support his conclusion, and we cannot say that it is manifestly against the weight of the evidence.    On the contrary, it seems to us that there are several circumstances, appearing among the admitted or undisputed facts, which tend strongly to support his conclusion.    It is clear to our minds that when C. H. Strickland executed these mortgages his purpose was not to gain time from his favored creditors and thereby enable him to continue business.    The debt to his wife, assuming it to have been a valid obligation, so far as appears from the testimony, was for the first time put into legal form when the mortgage to her was executed, and there is nothing whatever to show that this was done with a view to gain time.    On the contrary, the inference would be the other way.    As to the debt to his former partner and friend, Arnstein, it is quite certain that there was no such purpose in giving that mortgage.    On the con-

trary, a very large part of it was not then due, and instead of gaining time on that debt by giving the mortgage, its maturity was advanced nearly two years as to a large part of it. The very fact that when this mortgage was given, notes not due until 1st January, 1889, and 1st January, 1890, were taken up, and a new note, payable *on demand*, was substituted therefor, is a very strong circumstance to show that the purpose was to do exactly what was done within a very few days thereafter; in fact, considering that the parties were all in New York when the mortgages were executed, and that the mortgaged property was in Camden, just about as soon as it could have been done. But, without going into a discussion of the facts, it seems to us that the circumstances of the case point strongly to the conclusion reached by the Circuit Judge—that these mortgages were not intended *bona fide* as security merely, but, on the contrary, were designed to effect precisely the same result as if a formal deed of assignment had been made.

The first ground of appeal was, as we supposed, and as counsel for respondents manifestly understood, abandoned; but counsel for appellants, in his argument here, states it in this way: "The first exception will not be urged, as it is not desired that this case should rest upon a technical irregularity in the verification of the complaint by the plaintiff's attorneys"; but in discussing his second and fifth grounds he seems to take the position that inasmuch as the complaint was verified only by the plaintiff's attorneys, all the allegations therein contained based on their information and belief must be disregarded as not proved. We are somewhat at a loss to reconcile these two positions; but inasmuch as it does not appear that any of the questions raised by the first, second, or fifth exceptions were either presented to or passed upon by the Circuit Judge, no such questions can be considered here. We may add, however, that the undisputed facts admitted in the answers either expressly or by a failure to deny them, may be regarded as sufficient to sustain the findings of fact below; and certainly such admissions would be sufficient legal evidence.

The third ground is disposed of by the express terms of the provisions of section 2016, General Statutes, which dispense

with the necessity for obtaining judgment and exhausting legal remedies before instituting an action of this kind. The position is taken by appellant that the provisions of this section apply only where an attack is made upon a *formal deed of assignment;* but if, as we have seen, such a transaction as that brought in question here, is to be treated as if such formal deed of assignment had been made, it is quite clear that the position taken by appellant cannot be sustained.

In view of the fact that the judgment appealed from expressly provides for making Springs, Heath & Co. parties defendants to this action, we are unable to perceive the pertinency of the sixth ground of appeal.

The seventh ground of appeal cannot be sustained. The Circuit Judge was acting strictly within the limits of his discretion in not requiring security on the injunction bond. *Code,* § 243. The security for the costs of an action which may be required of a non-resident plaintiff is a totally different thing from the injunction bond required by the section of the code just cited, and the two things should not be confounded. There does not appear to have been any application for security for costs provided for by the Rule of Court, and, therefore, such application was neither granted nor refused. There is nothing to prevent a non-resident plaintiff from maintaining an action in the courts of the State, without giving security for costs, unless there is an order requiring such security, which order should only be granted upon due notice.

The eighth ground which raises the question of jurisdiction in such general terms as do not indicate the point of objection to the jurisdiction, might be passed over for that reason. We will, however, consider the point which, as we learn from the argument only, was intended to be raised. That point is, that, inasmuch as the mortgagee of personal property is to be regarded as the real owner after condition broken, Judge Kershaw had no jurisdiction to order the mortgaged property to be taken from the possession of the mortgagees, the owners, and delivered to the receivers, pending the litigation, unless the mortgagees had been shown to be insolvent. Whether this is really a question of jurisdiction we need not stop to inquire, as the position taken by

appellant rests upon a ground which, as we have seen, is untenable; and that is, that the mortgages were valid instruments as such.

The ninth ground is too general to require further notice.

The judgment of this court is that the judgment and order of Judge Kershaw be affirmed.