RUFF v. ELKIN.

1. SERVICE ON INFANTS.—An infant under fourteen years of age is not properly made a party to an action where the summons is not personally served upon him.

2. IMPEACHMENT OF JUDGMENTS.—The rule declared as to void and voidable judgments, and how alone the latter may be impeached.

3. IBID.—SERVICE ON INFANTS.—Where parties claiming under a purchaser at foreclosure sale bring action to recover the land from the heir of the mortgagor, who, when an infant, had been the defendant to the foreclosure proceeding, and it is agreed that the defendant shall have the right to introduce any evidence and make any point in his defence which he could introduce or make in any proceeding instituted by him to vacate the judgment of foreclosure, he may introduce evidence to disprove the return of service, regular in form, endorsed by the sheriff on the summons in foreclosure, and upon such evidence the judgment may be vacated.

4. DECREE—AMENDMENTS—INFANTS.—Where an infant is not properly before the court, no amendment can be made to a decree by consent of one assuming to be attorney of the infant's guardian *ad litem.*

5. GENERAL EXCEPTIONS.—Exceptions alleging error to the trial judge in charging certain requests will not be considered, where the judge stated

to the jury that they were good law, except as modified by his charge, and the exceptions fail to specify the modifications or to suggest wherein these modifications were erroneous.

6. JUDICIAL SALES—FRAUD—JURY TRIAL.—There was no error in submitting to the jury the question of actual fraud in chilling bids at a sale under which the plaintiffs were now claiming as beneficiaries.

7. ACTION—AMENDMENT.—A complaint demanded the recovery and partition of land alleged to have been purchased under foreclosure proceedings, and the defendant in possession, the heir of the mortgagor, successfully attacked the validity of the foreclosure and purchase. *Held*, that there was no error in dismissing the complaint.

Before ALDRICH, J., Fairfield, February, 1892.

This was an action by Silas W. Ruff and others against Carrie G. Elkin, Henry L. Parr, and others.

*Messrs. J. G. McCants* and *J. E. McDonald,* for appellant.

*Messrs. Ragsdale & Ragsdale,* contra.

November 13, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. The parties in this case are very numerous, and the facts somewhat complicated, so that it will promote clearness to make a short preliminary statement.

Many years ago, one James Elkin, of Fairfield County, died, leaving a will, by which, among other things, he devised a certain tract of land, containing 181 acres, to his son, William B. Elkin, on the express condition, that in case he should die without heirs of his body, the said land should be divided between his daughters, Mary Ann Elkin and Judy M. Ruff, and to their issue or children, forever, &c. The life-tenant went into possession, and, some time before 1858, some proceeding was instituted in the old Court of Equity to sell the land and change the investment; and Chancellor Dargan granted a decretal order, that the land should be sold upon a credit (except as to costs) for one, two, three, four, and five years; the purchaser "to give bond and good personal security and a mortgage of the premises to secure the purchase money." One Henry W. Parr became the purchaser, and complied with the terms

of sale by giving to W. R. Robertson, then the commissioner in equity for Fairfield, a bond for the purchase money, with personal sureties, R. W. Coleman and John Yarborough, and secured the same by a mortgage of the premises sold, viz: the Elkin land, consisting of 181 acres. It seems that the said purchaser, Parr, also executed another mortgage to Coleman, one of his sureties on the aforesaid bond to the commissioner, in order to save harmless and indemnify the said Coleman from any loss by reason of his suretyship upon the bond aforesaid. This latter mortgage was on another tract of land of the said Parr, and generally known as the "Montgomery land" (581 acres), being the tract now in dispute.

Matters seem to have remained in this condition during the war, and down to 1876, when the mortgagor, Parr, died intestate, possessed of some personalty and several tracts of land, and leaving as his only heir and distributee an infant son, Henry L. Parr, then under seven years of age, who is the party named in this case as the defendant. Soon after the death of Parr, the father, William B. Elkin, the life tenant, obtained letters of administration upon the estate of Henry W. Parr, and on May 26, 1877, a suit on the equity side of the court was commenced in the name of Samuel B. Clowney, as clerk of the court (who had succeeded to the rights of Robertson as commissioner in equity), against Henry L. Parr, the infant son of the mortgagor, Henry W. Parr, deceased, to foreclose the two mortgages above described—both that of the Elkin land to Robertson as commissioner, and that of the Montgomery land to Coleman as surety. The legal proceedings in this case, seeming to be regular on their face, and neither W. B. Elkin, as administrator, nor the guardian *ad litem* of the infant Parr, making any objection, proceeded to judgment; but as to their legality, force, and effect, we will have occasion to consider hereafter. (1.) The order of sale under this judgment of Judge Mackey, May 9, 1877, included only the original Elkin land under the mortgage to the commissioner, which the sheriff reported that he sold to one Murphy for $726, and the same was confirmed by the court. (2.) On October 29, 1877, Judge Kershaw passed an order, purporting to amend the original

order of sale, by adding to it the Montgomery tract of land, which seems to have been conveyed by the sheriff on December 3, 1877, for the consideration of $1,995, expressed in the sheriff's deed, reciting that the land had been sold on that day, viz: December 3, 1877, under Judge Mackey's order of May 9, 1877 (then amended), to W. B. Elkin, "to hold the same in accordance with the provisions and limitations contained in the will of James Elkin, deceased"—that is to say, to hold the land himself for life, &c.

In April, 1890, W. B. Elkin died without issue, and thus the event, upon which the remainders over in the original devise were to take effect, had occurred. At that time the two persons, viz: Mary A. Elkin and Judy W. Ruff, who were named as the first takers in remainder, were dead, but leaving numerous children and grand-children, who together were about to institute proceedings to partition among themselves the Montgomery tract of land, in the view that, by sale under the foreclosure decree in the case of Samuel B. Clowney, as clerk of the court, *vs.* Henry L. Parr and W. B. Elkin, as administrator of Henry W. Parr, deceased, said tract of land had been substituted for that devised in the Elkin will. At the same time Henry L. Parr, having attained his majority, and claiming that the sale in foreclosure, under which that tract purported to have been sold, was irregular, illegal, and absolutely void as to him, was about to institute proceedings for the establishment of his rights thereto. Under these circumstances, and in order to facilitate the effort to ascertain the rights of the different parties, they mutually entered into the following agreement: "Whereas the children of Judith W. Ruff and of Mary A. Elkin claim the said (Montgomery) tract of land, and are now instituting proceedings to partition the same among themselves; and whereas the said Henry L. Parr is in the possession of the said tract of land, claiming to be the owner thereof in fee, and is about to institute proceedings for the establishment of his rights thereto; and whereas it will facilitate matters to have all issues settled in one action, it is agreed: 1. That the said Henry L. Parr shall be joined as a party defendant in the action for partition among the children of Judith W. Ruff and Mary

A. Elkin, deceased. 2. That the issues between the said parties respecting the ownership of and the right to the said tract of land shall be submitted to the court and a jury, and the said parties, the children of Mrs. Ruff and Mary A. Elkin, shall have the opening and the reply. 3. (Substituted.) That the defendant, Henry L. Parr, shall have the right to introduce any evidence and make any point in his defence which he could introduce or make in any action which he might bring to set aside the said judgment of Samuel B. Clowney, as clerk, *vs.* Henry L. Parr and William B. Elkin, as administrator, or in any direct proceeding which he might institute to vacate or set aside said judgment," &c.

In pursuance of this agreement, the Circuit Judge submitted to the jury the following issue: "Is Henry L. Parr the owner in fee of the land described in the complaint?" Upon this issue the plaintiffs offered in evidence the judgment roll in the case of Clowney, clerk, *vs.* Henry L. Parr and W. B. Elkin, administrator, filed on May —, 1877, and certified copy of deed of Sheriff Ruff to William B. Elkin, made under said proceedings. From the record, it appeared that the summons was in the usual form, and had endorsed the following acceptance: "I accept service of the summons and complaint, as guardian of Henry L. Parr, at Alston, S. C. (Signed) W. B. Elkin;" and there was the following affidavit of service: "R. F. Martin, being duly sworn, says, that he served the summons and complaint in this action on the defendants by delivering to them personally and leaving with them copies of the same at Alston, S. C., on the 29th day of March, 1877, and that he knew the persons so served to be the ones mentioned and described in the summons as Henry L. Parr and William B. Elkin, the defendants therein, and the deponent is not a party to the action. R. F. Martin. Sworn to before me, March 13, 1877. S. B. Clowney, clerk."

Notice of the application for the appointment of a guardian *ad litem* for the infant defendant, Henry L. Parr, was also served on the said William B. Elkin at the same time and place. The plaintiffs then rested.

Then Henry L. Parr (over objections) offered testimony im-

peaching "the record," and tending to show that personal service of the summons was never made, as alleged, upon him, who was then an infant under the age of seven years. He testified positively that no paper in the case was ever personally served upon him, and that he really did not know that there was any such case until years afterwards. And the deputy sheriff, Martin, also testified that the service was not actually made upon the infant Parr, but upon William B. Elkin, who claimed to be his guardian, the infant, however, being present at the time, &c.

The attorney of Parr made eleven requests to charge, which are long, and all being printed in the Brief, need not be restated here. Among other things, the judge charged: "Now, you have in this case the return of the deputy sheriff, in which he states that he served the summons and complaint in this action on the defendant by delivering to them personally, and leaving with them, copies of the same at Alston on March 29, 1877, and that he knows the persons so served to be the ones mentioned and described in the summons and complaint as Henry L. Parr and William B. Elkin. That is, a paper, a written instrument. It is my duty to construe that paper. There is nothing hidden about that paper. It is a plain outspoken affidavit, that he served Henry L. Parr personally, and upon its face it is regular. That being the law, and it being my duty to instruct you, I charge you, that that service was according to law, and that Henry L. Parr was personally served. But it would be manifestly unjust if a sheriff or deputy sheriff could, by making a false return, bind a party (in this case Henry L. Parr), when, as a matter of fact, he never served him personally. Therefore, the law is, that while that affidavit on the record, coming as it does from an officer of the court, nothing else appearing, is presumed to be correct, yet, when it is attacked, it may be shown to be incorrect or false. In this case they have undertaken to attack that affidavit of Martin. Now, I can't charge you as to what the facts were. You have heard the testimony of Mr. Parr, in which he states as to the failure to serve the summons and complaint on him; you have heard the testimony of Mr. Martin in regard to what he did—what he now says

about the matter. Well, I cannot comment on that. I do not mean to say, though, that the jury are restricted, to determine the issues, whether Mr. Martin, when he made that affidavit, perjured himself—told a wilful falsehood, or made an unintentional mistake. You heard his testimony; and the question for you to pass upon now is not whether Mr. Martin was guilty of perjury, or whether he made a mistake. The question is, did he serve these papers on Henry L. Parr? If he made a personal service, then that is all, so far as that issue is concerned. If he failed to serve them personally, then this judgment and the sale under it never divested the rights of Henry L. Parr," &c.

Under this charge, the jury found affirmatively that Henry L. Parr was the owner in fee simple of the Montgomery tract of land. Thereupon the other parties moved for a new trial on the minutes of the court, which was refused; and they then moved that his honor would "proceed to adjust the equities of the parties;" and this, also, being refused, the judge delivered his decree, affirming the verdict of the jury, and dismissing the complaint as against Henry L. Parr, with leave to plaintiffs to apply to the court for such action as they may deem proper, and the law will permit, to revive the action against W. B. Elkin, as administrator.

From this final judgment the appeal comes to this court upon the following exceptions:

(1.) That his honor erred in allowing R. F. Martin, deputy sheriff, to testify in contradiction to his affidavit of service of summons and complaint in Clowney, clerk, *vs.* Henry L. Parr and W. B. Elkin.

(2.) That his honor erred in allowing Martin, deputy sheriff, to testify as to his recollections and impressions as to the service of the summons and complaint in Clowney, clerk, *vs.* Parr and Elkin, in contradiction of his affidavit endorsed on said summons.

(3.) That his honor erred in charging that there must have been a manual delivery of the summons in the case of Clowney, clerk, *vs.* Parr and Elkin.

(4.) That his honor erred in charging the requests of defendant, Henry L. Parr, numbered 2, 3, 5, 6, 7, 8, 9, 10, and 11.

(5.) That his honor erred in charging the jury upon the question of chilling the biddings at the sale under the judgment aforesaid, when there was no evidence in the case to warrant the charge.

(6.) That his honor erred in charging the jury as to fraud on the part of the Ruffs and Elkins being parties to this action, in procuring the judgment in the aforesaid case of Clowney, clerk, *vs.* Parr and Elkins, administrator, when there was no testimony showing that they were parties to said action.

(7.) That his honor erred in charging the jury upon the general question of fraud in, and payment of, the judgment of Clowney, as clerk, *vs.* Parr and Elkin, as there was no evidence to warrant such a charge.

(8.) That his honor erred in holding that it was necessary to have a legal representative of the estate of Henry W. Parr before the court before he could adjudicate the equities between the parties, when it appeared from the undisputed testimony that a legal and valid judgment had already been obtained and entered against the estate of Henry W. Parr, deceased, in the case of Clowney, clerk, *vs.* Henry L. Parr and William B. Elkin, as administrator.

(9.) That his honor erred in holding that the order of Judge Kershaw, amending the aforesaid judgment of Clowney, clerk, &c., was without force and effect.

(10.) That his honor erred in holding on the equity side of the court, that the complaint should be dismissed, &c.

The Montgomery tract of land was the property of Henry W. Parr, the father, and never passed under the will of James Elkin; and, therefore, the devisees under that will have no interest therein, unless it was transferred to them by the force and effect of the sale made under the proceedings in the case of Clowney, clerk, *vs.* Henry L. Parr and William B. Elkin, administrator. It is, therefore, manifest that the *main question* in the case is, whether that judgment and the sale under it were binding upon Henry L. Parr, or illegal and void as to him. It is insisted that the said proceedings were and are ab-

solutely void as to him, for at least two reasons: that he was never made a party to that case, and if he was, that the original order for sale made by Judge Mackey did not give authority to sell the Montgomery tract of land, the same not being included in the mortgage to the commissioner (clerk) or in the order of sale; and the subsequent order of Judge Kershaw to amend the order of sale by adding the Montgomery tract to it, did not cure the defect.

First. Was Parr made a party in the case of Clowney, clerk, &c., so often referred to? Being a minor under fourteen years of age, he could be made a party defendant only by a strict compliance with the law upon the subject, which requires that "all civil actions in courts of record shall be commenced by service of a summons." Code, § 148. "If the action be against a minor under the age of fourteen years, a copy of the summons shall be served by delivering to such minor personally, and also to his father, mother, or guardian, or, if there be none within the State, then to any person having care or control of such minor, or with whom he shall reside, or in whose service he shall be employed." Code, § 155, subd. 2. The record states service of the summons upon Henry L. Parr in the usual form, and also shows that William B. Elkin accepted service "as guardian of Henry L. Parr." The judge referred the fact as to personal service of summons to the jury, and (against objection) allowed Parr himself to be examined (and he testified that he had never been served with any paper in the case), and the deputy sheriff, Martin, who had served the papers, to explain and contradict his sworn return of the personal service of summons.

Did the judge commit error in allowing the record to be thus assailed? There is much conflict in the authorities upon the subject, but we may assume that these propositions have been settled in this State: (1) That a void judgment, order, or decree, in whatever tribunal it may be rendered, is in legal effect nothing. "All acts performed under it, and claims flowing out of it, are void. Hence a sale based on such a judgment has no foundation in law." (2) That judicial proceedings are void, when the court in which they are

taken is acting without jurisdiction, either as to the subject matter or the parties. If it have jurisdiction of the subject matter, but not of the parties, the judgment *quoad* such parties is void. (3) That, however, a judgment is considered as something more than an ordinary fact, liable to be overthrown by parol proof; that there is in its favor something more than a presumption of correctness, which may be rebutted; that this is a legal presumption so conclusive in its character as to give the judgment immunity from impeachment in any collateral proceeding, that is to say: "In an action other than that in which it was rendered, except upon proof of fraud or want of jurisdiction." See 1 R. & L. Dict. "Collateral Impeachment," page 226; *Riker* v. *Vaughan*, 23 S. C., 435; *Turner* v. *Malone*, 24 *Id.*, 298; *Tederall* v. *Bouknight*, 25 *Id.*, 276.[1]

From these settled principles, we think it naturally and necessarily follows, that where there is a judgment, regular on its face, but showing a jurisdictional infirmity, which is hidden, and can only be made to appear by proof, it is what is called a "voidable judgment," and an injured party may assail it in a direct proceeding instituted for the purpose of setting it aside in whole or in part, for the want of jurisdiction. It is not denied, but, on the contrary, was expressly admitted by the parties, "that the defendant, Henry L. Parr, shall have the right to introduce any evidence and make any point in his defence, which he could introduce or make in any action which he might bring, to set aside the said judgment of Samuel B. Clowney, as clerk, *vs.* Henry L. Parr and William B. Elkin, as administrator, or in any direct proceeding which he might institute to vacate or set aside said judgment," &c. We can not say that the Circuit Judge committed error, in admitting the parol testimony objected to, as in conflict with the record, or in construing the provisions of the Code as to the necessity of personal service of summons on a minor under fourteen years of age. See the authorities appended in a note to *Taylor* v. *Lewis*, 19 Am. Dec., 135.

Second. Under this view, the other grounds of appeal lose much of their importance, but we will advert to them briefly.

_____
[1]See, too, *Prince* v. *Dickson*, 39 S. C., 477.—REPORTER.

Clowney, as clerk, brought the contested action to fore-
close the mortgage on the Elkin land (181 acres), given
to his predecessor as commissioner, making exhibit, also,
of the mortgage on the Montgomery place, which had been
given to Coleman to indemnify him as surety. There was only
one order of sale (May 9, 1877,) which referred to premises *"as
hereinafter set forth,"* and no other premises were "set forth"
except the Elkin land (181 acres). At the next term of the
court, however, Judge Kershaw, on October 25, 1877, passed
an order, purporting to amend the order of sale "by adding
thereto, at the end thereof, a paragraph describing the Mont-
gomery tract," under which it was sold. The judge held, as
matter of law, "that Henry L. Parr, not being a party to the
action, and being an infant, was incapable of employing an
attorney, and that the consent of Mr. Obear, as attorney, gave
no force and effect to the judgment, and that said order of
Judge Kershaw was without force or effect." We cannot say
that this was error. See *Chafee* v. *Rainey,* 21 S. C., 16; *Bar-
rett* v. *James,* 30 *Id.,* 331; 2 Dan. Ch. P. & P., 1028. The rule
seems to be, "that no alteration can be made in a decree or
motion without a rehearing, except in a matter of clerical error
or of form, or where the matter to be inserted is clearly conse-
quential on the directions already given," &c.

The fourth exception, that there was error in charging the
requests of Parr numbered 2, 3, 5, 6, 7, 8, 9, 10, and 11, is, as
it seems to us, a clear misapprehension. The judge
charged that the requests were good law, except as mod-
ified in his charge, which we are now considering. Be-
sides, the exception is too vague and general. In order to
make the points clear, it was necessary not only to show that
the requests as modified were still error, but in what particulars
they were so.

Exceptions 5, 6, and 7 seem to complain that as the plaintiffs
were not parties to the foreclosure suit in the name of Clowney,
as clerk, it was error to refer to the jury the question of
fact, as to the alleged fraud in chilling the biddings, &c.

It is true that the plaintiffs, remaindermen under the
will of James Elkin, were not *nominatim* parties to the foreclos-

ure suit of Clowney, clerk, who had no interest, except as a public officer. But they were, nevertheless, beneficiaries under the proceeding, the sheriff who made the sale being one and the purchaser of the land another of those parties. We cannot hold that it was error to leave the question of actual fraud to the jury, always a proper tribunal for the decision of such questions.

We are not sure that we understand what is meant by "adjudicating the equities between the parties." The plaintiffs surely have no right to partition the Montgomery tract of land until their right to it is established. From the view which was taken by the Circuit Judge, it seems to us that there was nothing for him to do but to dismiss the complaint as to Henry L. Parr, simply upon the ground that the sale of the Montgomery tract of land, under the aforesaid foreclosure proceedings, was, *as to him,* an utter nullity, simply as void as if it had never existed. The question of payment, in fact, was withdrawn from the jury, and this ruling is without prejudice to any rights which the parties may be advised that they are entitled to.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.