## 14823

### FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA v. KNOTTS *ET AL.*

(1 S. E. (2d), 797)

August, 1937, October, 1937 January, 1938,

*Messrs. C. E. Summers* and *Melton & Belser,* for respondent-appellant First Carolinas Joint Stock Land Bank of Columbia,

*Messrs. Moss & Moss* and *Robinson & Robinson,* for appellant Annie M. Knotts

*Messrs. Hunter & Harley* and *Zeigler & Brailsford,* for respondent Shingler B. Knotts,

February 14, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This was a creditors' suit instituted by the plaintiff on behalf of itself and all other creditors for the purpose of having the debts and liabilities of the defendant, Shingler B. Knotts, and the rank and priority of his mortgages determined, and of having his assets ascertained and administered by the Court, defining and determining the location of his dwelling and the division line between the properties mortgaged to the plaintiff and the properties mortgaged to his sister, the defendant, Annie M. Knotts, respectively and for the purpose of setting aside certain default judgments and a chattel mortgage given by the defendant, Shingler B. Knotts to Annie M. Knotts. General equitable relief was prayed, including a general receivership.

The complaint is voluminous, detailing a long history of litigation between the plaintiff and the defendants, and particularly the defendant, Shingler B. Knotts, who owned considerable property, real and personal, in Orangeburg County, all of which he mortgaged at different times. These mortgages and certain default judgments have given rise to the various questions which this appeal presents.

This action was commenced in August, 1937, and the complaint sets out various steps, proceedings and actions which preceded its institution on the part of the bank in the effort to collect a large indebtedness due it by Shingler B. Knotts.

The complaint is the subject of a vigorous attack by demurrer, and for that reason we have deemed it expedient, despite its length, to have it reported so that reference to its numerous allegations may be made from time to time without unnecessary repetition in our discussion of the issues.

Upon the verified complaint and the records of the lower Court referred to therein, his Honor, Judge Mann, upon motion of the bank, issued a rule directing the defendants to show cause why the relief prayed for should not be granted. The defendants, Shingler B. Knotts and J. E. Culler, as mortgagees, and the tenants and sharecroppers of Shingler B. Knotts, made return, as did the defendant, Annie M. Knotts; and the bank filed a reply. The hearing on the rule resulted in an order of Judge Mann, of date September 24, 1937, wherein he granted the relief prayed for in the complaint; and, among other things, appointed T. A. Cauthen as general Receiver of the assets of Shingler B. Knotts, restrained all further proceedings in the foreclosure suit of *Annie M. Knotts v. S. B. Knotts*; restrained Annie M. Knotts and J. E. Culler from foreclosing the chattel mortgages which had been given to them in 1937; called in all creditors from the filing and proving of claims; and consolidated with the pending creditors' suit the foreclosure suit of *Bank v. Knotts,* which had been instituted on June 25, 1936, and the foreclosure suit of *Annie M. Knotts v. S. B. Knotts,* which had been instituted on July 6, 1937.

The defendants are appealing from this order.

Thereafter the defendants, Annie M. Knotts, J. E. Culler and S. B. Knotts, demurred to the complaint upon various grounds. This demurrer was heard on October 4, 1937, by his Honor, Judge Bellinger, then presiding in the First Circuit. By his order of date February 18, 1938, he sustained the demurrers and dismissed the complaint. The bank is appealing from this order.

We shall first consider the questions raised by the appeal of the defendants from the order of Judge Mann.

It is contended that the lower Court erred in holding that the foreclosure of the chattel mortgage and the other default judgments referred to in the complaint could not be assailed in this proceeding. The portion is taken that this holding allowed an attack upon validity of existing judgments ren-

dered by Courts of competent jurisdiction in causes other than those in which the attack is made. The defendants argue ably and elaborately that the order permits a collateral attack upon these judgments previously obtained in other actions, which can be done only by a proper motion made in the actions in which the judgments were rendered.

A collateral attack upon a judgment has been defined to be "one in an action other than that in which it was rendered." *Turner v. Malone,* 24 S. C., 398; *Darby & Co. v. Shannon,* 19 S. C., 526. The general rule is that a judgment may be attacked collaterally only when its defects and infirmities are apparent by an inspection of it. *Finley v. Robertson,* 17 S. C., 435; *Tederall v. Bouknight,* 25 S. C., 275.

However, the case is different when fraud or collusion is alleged. A well-recognized exception to the general rule is found in *Ruff v. Elkin,* 40 S. C., 69, 18 S. E., 220, 223, where it is said that a judgment may not be impeached in an action other than that in which it was rendered, "except upon proof of fraud, or want of jurisdiction." See 1 R. & L. Dist., Collateral Impeachment, page 226; *Riker v. Vaughan,* 23 S. C., 187; *Turner v. Malone, supra.*

The bank was not a party to the actions in which the judgments referred to were obtained, and the procedure adopted by it in bringing this independent action in equity to test the propriety of those judgments, is well supported by authority. 12 R. C. L., 470, where numerous cases are cited; *New York Life Ins. Co. v. Mobley,* 90 S. C., 552, 561, 73 S. E., 1032; *Tolbert v. Roark,* 126 S. C., 207, 218, 119 S. E., 571; *Stewart Lumber Co. v. Downs,* 142 Iowa, 420, 120 N. W., 1067, 29 L. R. A. (N. S.), 1190, 19 Ann. Cas., 1100.

In Black on Judgments, Vol. 1, page 318 (quoting from a Vermont case), it is said: "The rule that a judgment of a court of competent jurisdiction is conclusive, until re-

versed or in some manner set aside and annulled, and that it cannot be attacked collaterally by evidence tending to show that it was irregular or improperly obtained, only applies to parties and privies to the judgment, who may take proceedings for its reversal, and in no sense extends to strangers."

The cases of *Scott v. Newell*, 146 S. C., 385, 144 S. E., 82, and *Piedmont Press Ass'n v. Record Pub. Co.*, 156 S. C., 43, 152 S. E., 721, likewise recognize the propriety of an attack upon a judgment in an independent suit on the equity side of the Court, as distinct from a collateral or direct attack.

A debtor will not be allowed to hinder, delay or defraud his creditors by reason of a collusive and fraudulent judgment, although the judgment may be recovered under the deceptive guise of apparently regular judicial proceedings. In such case the creditor may show in an independent action that such judgment was procured through fraud of the debtor or complicity of both parties, with a design to hinder, delay, or defraud him. 27 C. J., 455, 456, 457; *Beattie v. Pool*, 13 S. C., 379; *Meinhard v. Youngblood*, 41 S. C., 312, 19 S. E., 675.

We also agree with the Circuit Judge that the point under discussion is unduly technical, since the present action embraces all parties who were parties litigant to the actions in which the judgments were obtained, and may be deemed by the Judge in his discretion a motion in the original cause. *Craddock v. Brinkley*, 177 N. C., 125, 98 S. E., 280; *Fowler v. Fowler*, 130 S. E., 315, 190 N. C., 536.

It is next suggested that the complaint alleges no facts showing any equitable basis for the appointment of a general Receiver. The Court stated that it recognized that the power of appointment of a Receiver should be resorted to only in exceptional circumstances, but held that the unusual

and exceptional circumstances of this case fully warranted the exercise of the power..

We have studied with much interest the argument of ■ counsel for the defendants on this phase of the case.

It does not shake our conviction, however, that the allegations of the complaint fully justify the action of the lower Court. *Regenstein v. Pearlstein,* 30 S. C., 192, 8 S. E., 850; *Virginia-Carolina Chemical Co. v. Hunter,* 84 S. C., 214, 66 S. E., 177; *Ex Parte Citizens' Exchange Bank of Denmark,* 140 S. C., 471, 139 S. E., 135; *Pelzer, Rodgers & Co. v. Hughes,* 27 S. C., 408, 3 S. E., 781; *Penn Mutual Life Ins. Co. v. Cudd,* 172 S. C., 88, 172 S. E., 787.

We are satisfied that the conclusion reached by Judge ■ Mann is correct, that under the peculiar circumstances of this case, a Court of equity has jurisdiction, and should exercise it, to try the issues as to the location of the dwelling and as to the boundary line between the properties covered by the respective mortgages of the bank and of Annie M. Knotts, and to determine their priority. *Uxbridge Co. v. Poppenheim,* 135 S. C., 26, 133 S. E., 461; *McRae v. Hamer,* 148 S. C., 403, 146 S. E., 243.

It is apparent from the allegations of the complaint that the division line between the real property covered by the bank's mortgage and the property covered by the mortgage of Annie M. Knotts has never been definitely and physically established on the ground. Therefore it is obvious that neither property would bring an adequate price with the question of the location of the dwelling unsettled and undetermined. A purchaser at a sale of either property would be immediately involved in litigation to determine the true division line. This is not a case where a line once existed and has since become lost, but one where the line has never been established. As was said in *Uxbridge Co. v. Poppenheim, supra* (135 S. C., 26, 133 S. E., 462) : "How would the plaintiff proceed at law under the circumstances of this case when he alleges that he has not been able to tell where the line is?

How far would he progress in a law case before a jury, when he could not prove where the line was, so as to show that the defendant had overstepped it?"

We think it apparent that the bank has no adequate remedy at law to relieve this situation.

The defendants challenge the power of Judge Mann to base his order in part on matters not then before him, the hearing following the issuance of the rule to show cause being based upon the pleadings only. The order contains this statement: "The circumstances in this case are very unusual, many of them being matters of judicial record, with which this court is personally as well as officially familiar." Assuming, without deciding, that a Court will not generally recognize judicially the contents of any of its records except the one in the proceeding before it, it will be noted by reference to the complaint that by its own terms it refers specifically to the numerous records of the proceedings which mark the history of the case. But aside from this, the Judge was amply justified in the conclusions reached by him, based upon a consideration of the pleadings only, without reference to any extraneous matter. It would be hypercritical to hold otherwise.

It is argued by the defendants that Judge Mann committed error in his order of August 26, 1937 (this being one of the numerous orders in the case), when, pending the return to the rule to show cause to which we have adverted he issued, without notice to the defendants, a temporary restraining order, expressly enjoining the judicial sale which had been theretofore ordered by the Court in the foreclosure proceeding of *Annie M. Knotts v. Shingler B. Knotts*. It is contended that such order was contrary to Section 569, 1932 Code, which provides, among other things, that an injunction to stay the execution of a judicial sale shall not be allowed except upon notice. It is pointed out that Rule 64 of the Circuit Court Rules provides a similar procedure. We think the question raising this point is well taken,

but it does not constitute reversible error. In our opinion, the issue is now largely academic, and with no real bearing upon this appeal, for the reason that on September 3, 1937, Judge Mann entertained and heard an *ex parte* motion, made on behalf of Annie M. Knotts, for a norder modifying the order now complied of; and further, after a full hearing on the whole matter on September 24, 1937, continued the restraining order previously granted. Therefore in effect the requirements of the statute and of the rule were complied with. Nor does it appear that Annie M. Knotts has sustained any substantial injury.

In the order of Judge Bellinger it is held that the plaintiff states no cause of action under the assignment laws and the Statute of Elizabeth.

> An analysis of the allegations of the complaint leads us to concur in Judge Bellinger's conclusion with reference to the Statute of Elizabeth.

> In our view, however, the complaint states a good cause of action under the assignment statutes—Sections 9106 and 9107, 1932 Code—which prohibit any assignment by an insolvent debtor of his property for the benefit of his creditors in which any preference or priority is given to some over others. It is not only formal general assignments containing preferences, which these sections prohibit, but any transfer which amounts to such general assignment. Of course the assignment Act has no application unless there is either an actual assignment or a state of facts fully proved or admitted, which in conscience or equity is tantamount to an assignment with unlawful preferences. *Verner v. McGhee,* 26 S. C., 248, 2 S. E., 113.

> In *Porter v. Stricker,* 44 S. C., 183, 21 S. E., 635, 640, practically all the previous cases which discuss the assignment Act are reviewed. In that case it is said: "From this review of the cases upon the subject in this state, the following propositions, applicable to the case under consideration, are clearly deducible: (1) That an in-

solvent debtor may by a *bona fide* mortgage, which is in-
tended merely as a security for a just debt, prefer one of
his creditors; (2) that if the mortgage is really designed to
operate, not as a security merely, but as a means of transfer-
ring the debtor's property to the favored creditor, in prefer-
ence to the other creditors, then it is void, under the assign-
ment law; (3) that the question as to what was the inten-
tion is a question of fact."

In *Mitchell v. Mitchell*, 42 S. C., 475, 20 S. E., 405,
409, the following propositions are laid down: "First,
the debtor must be insolvent; second, the security
must cover the whole of such insolvent's estate, actually or
practically; third, it must be given in good faith to secure a
debt, and for the sole purpose of securing that debt; fourth,
it must not be a transfer of debtor's whole estate to one
creditor, to the exclusion of other creditors."

The complaint alleges in Paragraph 18: "That the said
Shingler B. Knotts is and was at the times hereinabove
mentioned insolvent, and known by the said Annie M.
Knotts to be insolvent * * *. The land mortgaged to
this plaintiff is not worth the mortgage debt. * * * And
that the taking and allowance of the said default judgments
in favor of the said Annie M. Knotts, and giving of the
said $4,000.00 mortgage above mentioned, amounted in ef-
fect to a transfer of all his property, and were intended to
effect an unlawful preference in favor of Annie M. Knotts,
and to hinder, delay and defeat the creditors of the said
Shingler B. Knotts, and particularly this plaintiff."

The demurrer, therefore, admits knowledge on the
part of Annie M. Knotts that Shingler B. Knotts
was insolvent, and knowledge that the land mort-
gaged to the plaintiff would not bring the mortgage debt.
The demurrer likewise admits that the taking of the de-
fault judgments and the giving of the $4,000.00 mortgage
substantially effected a transfer of all of his property, and
that such taking was intended not only to effect an unlaw-

ful preference in her favor, but with the intent to hinder, delay and defeat the creditors of Shingler B. Knotts.

It seems to us ·that all of the propositions stated in ██ ██ *Porter v. Stricker, supra,* and in *Mitchell v. Mitchell, supra,* are substantially found in the allegations of the complaint, to which we have referred, and in fact in the complaint as a whole, which to our mind is implicit with charges from which the inference of unlawful preference is inescapable.

It may be conceded that a debtor may lawfully, under proper circumstances and in good faith, secure a debt created simultaneously with the execution of the instrument giving the preference, but it is quite another thing to say that a failing debtor may give an unlawful perference.

The assignment Act excludes "any loan of actual value, or the security therefor, made in good faith, upon a security taken in good faith, on the occasion of the making of such loan, or any security *bona fide* made for advances." Code 1932, § 9107.

The authorities in this State hold that if the instruments employed were *bona fide* intended merely as security, and not as a means of evading the provisions of the assignment Act, then they do not fall within the purview of that Act; but if, on the contrary, the instruments resorted to whatever may be their form, were intended, not merely as security but as a means of transferring the debtor's property to the favored creditor to the exclusion of others, with a view to evade the provisions of the assignment Act, then they must be regarded as null and void under the provisions of that Act. *Meinhard v. Strickland,* 29 S. C., 491, 7 S. E., 838. The intent of the parties is always a question for the jury. *Porter v. Stricker, supra.*

In his order, sustaining the several demurrers of the ██ defendants, Judge Bellinger held, among other things, that the complaint does not state facts sufficient to constitute a cause of action against the defendants and as an

additional ground that several causes of action have been improperly joined in the complaint. The exceptions of the plaintiff charging error in this holding must be sustained.

What was said in *Sheppard v. Green,* 48 S. C., 165, 26 S. E., 224, 227, with reference to the complaint in that case is likewise true here: "There is but a single cause of action stated in the complaint, and all the other matters therein stated are merely incidents of that single cause. To borrow the phraseology of Mr. Pomeroy, the primary right which the plaintiffs are seeking to enforce is the right to have the assets of the estate of their alleged debtor applied to the payment of their claim, and the breach of this primary right in the modes stated in the complaint is the delict complained of. These two things, says Mr. Pomeroy, in his work on Remedies, according to the Code Pleading, at page 487, § 453, constitute the cause of action. If the plaintiffs have a valid claim against the estate of the testator, Vaughan, there can be no doubt that they are entitled to the aid of the Court in subjecting the assets of such estate to the payment of their debt; and, if any such assets have improperly or fraudulently gone into the hands of third persons, they may, in the same action, be brought back, and subjected to the payment of the debts of the testator; and this is practically the scope and object of this action. * * * So that the Court of equity, having all parties in interest before it, may do complete justice, and avoid multiplicity of actions."

As was said in *Williams v. Neel,* 10 Rich. Eq., 338, 339, 73 Am. Dec., 94, quoting with approval from Story Eq. Pl.: "The principle is very well established that 'where the interests of the plaintiffs are the same, although the defendants may not have a co-extensive common interest, but their interests may be derived under different instruments, if the general objects of the bill will be promoted by their being united in a single suit, the Court will not hesitate to sustain the bill against all of them.' "

And see *Temple v. Montgomery,* 157 S. C., 85, 153 S. E., 640, 12 R. C. L., 469-471, 482, 34 C. J., 527.

It was also contended by the defendants in their demurrers that the plaintiff's action is premature, in that it appears upon the face of the complaint that the plaintiff is attempting to bring a creditors' suit before it has exhausted its legal remedies, viz.: That it has not alleged that an execution has been issued on the plaintiff's judgment and a *nulla bona* return made. This ground of the demurrer was upheld by Judge Bellinger, and exception thereto is taken by the plaintiff. We think the exception is well taken. The plaintiff alleges, and the demurrer admits, that the plaintiff has already obtained a judgment in the sum of $25,576.85; that Shingler B. Knotts is insolvent; that the land is not worth the mortgage debt, and that the plaintiff has no adequate remedy at law.

Under the facts and circumstances peculiar to this case it was not necessary before bringing this proceeding to issue execution and await a *nulla bona* return. *Sheppard v. Green, supra; Ragsdale v. Holmes,* 1 S. C., 91; *Shell v. Boyd,* 32 S. C., 359, 11 S. E., 205; *Miller v. Hughes,* 33 S. C., 530, 12 S. E., 419; *Virginia-Carolina Chemical Co. v. Hunter, supra.*

In the above-stated case of *Virginia-Carolina Chemical Co. v. Hunter,* the Court said (84 S. C., 214, 66 S. E., 179): " * * * But the very lucid opinion of Chief Justice McIver in *Miller v. Hughes,* 33 S. C. [530], 541, 12 S. E. 419, shows that, when a debtor is trying to defeat his creditors by an act or course of conduct which indicates moral fraud —a conscious intent to defeat, delay, or hinder his creditors in the collection of their debts—then a court of equity will grant any relief within its jurisdiction appropriate and effective to protect creditors against the fraud without requiring the creditor to run the risk of losing his debt from the delay of obtaining judgment and a return of *nulla bona* on the execution. This case was followed and approved in *Mein-*

*hard v. Youngblood,* 37 S. C. 231, 15 S. E. 950, 16 S. E. 771; *Sires v. Sires,* 43 S. C. 266, 21 S. E. 115; *Bank [of Charleston Nat. Banking Ass'n] v. Dowling,* 45 S. C. 677, 23 S. E. 982. It may be that the court would grant such relief before judgment and execution without evidence of moral fraud where such action seemed essential to prevent injustice, but on that point we express no opinion."

His Honor, Judge Dennis, heard a motion in this cause on behalf of the defendants for an order increasing the injunction bond to be filed by the plaintiff from $1,000.00 (the amount originally fixed by Judge Mann) to $4,000.00. He granted the motion and issued an order as prayed for. It appears that the motion on which this order was based was called for hearing before Judge Dennis on January 31, 1938, while he was assigned to the First Judicial Circuit, and was heard by him while he was presiding at Orangeburg. The plaintiff contends that Judge Dennis lacked jurisdiction to hear the motion. At the hearing this question was reserved by the Court at the request of the plaintiff, and was subsequently decided after a second notice and hearing in Darlington, at which counsel for the bank appeared.

The authorities in this State are uniform to the effect that where a Judge has jurisdiction to hear a matter and the matter having been heard before him, he entertains jurisdiction until his decision is rendered. *Roberts v. Wessinger,* 69 S. C., 283, 48 S. E., 248; *Rushton v. Woodham,* 68 S. C., 110, 46 S. E., 943; *Calhoun v. Port Royal & W. C. R. Co.,* 42 S. C., 132, 20 S. E., 30.

This disposes of the question of jurisdiction. But the plaintiff urges that Judge Dennis had no right to change or override Judge Mann's order. It is said that Judge Mann having considered the whole case and having fixed the amount of the bond at $1,000.00, it was not competent for Judge Dennis to change the amount of it. It is argued that that if the defendants were dissatisfied with the amount fixed in the bond, their proper course was an appeal. Lastly, it is

submitted that the bond fixed by Judge Mann was adequate in amount.

We do not think there is any merit in the argument ▮▮▮▮ on these points. As pointed out by Judge Dennis in his order, dated February 14, 1938, the order of Judge Mann fixing bond in this case permitted any party to apply at the foot of it for modification if desired. Furthermore, the fixing of the amount of the bond in a case of this kind is a matter of discretion, and we do not think that Judge Dennis abused his discretion. His order justified this. He says: "It appears that Annie M. Knotts is the holder of a first mortgage against Shingler B. Knotts covering 523 acres of land, on which there is some $19,000.00 due. She is also the holder of a chattel mortgage of $4,000.00 secured by some eleven horses and mules, stock and farm machinery. She is also the holder of a judgment of $4,700.00. She has been restrained by the court from proceeding to collect any of these debts or to realize on any of this security. The procedure followed by the plaintiff in this case was rather drastic and the plaintiff should be required to put up sufficient bond to protect the defendants in case it developed that the plaintiff was not entitled to the injunction complained of."

We affirm the orders of Judge Mann, except as modified, and affirm the order of Judge Dennis. We reverse the order of Judge Bellinger of date February 18, 1938, except as modified.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.