BIXBY v. ADAMS COUNTY.

1. **Swamp Lands: PRE-EMPTION : SETTLEMENT.** To entitle a party to the right of pre-emption under sections 973-4 of the Revision, he must become an actual settler, and make permanent improvements upon the land.

2. ——— : ——— : FRAUD. In an action by the assignee of a pre-emption certificate against the county to quiet title, the county may, in a cross-petition, set up fraud in the procurement of the certificate.

3. ——— : ——— : CONTRACT. A county contracted to convey its swamp lands to the American Emigrant Company, upon the undertaking of the latter to convey all lands to which pre-emption rights had attached to the holders of certificates. The county never actually conveyed its swamp lands under the contract, but the company conveyed to plaintiff upon the presentation of a fraudulent pre-emption certificate : *Held*, that plaintiff acquired no right as against the county.

4. ——— : ——— : ESTOPPEL. The fact that the county, by its officers, had levied taxes upon the land, would not estop it to set up title against plaintiff.

*Appeal from Adams Circuit Court.*

FRIDAY, OCTOBER 25.

ACTION in chancery to quiet the title of certain lands in plaintiff. Upon a hearing on the merits the Circuit Court rendered a decree granting the relief prayed for, from which defendant appeals.

*Frank M. Davis* and *J. H. Maley,* for appellant.

*Stuart Bros. & Mitchell,* for appellee.

BECK, J.—I. The petition shows that the lands in controversy are situated in Adams county, and are a part of the swamp lands granted to the county under familiar legislation of congress and of the State, prior to the inception of the plaintiff's title. The plaintiff's title and right to the lands are, in his petition, based upon the following alleged facts :

One Hanna settled upon the lands in 1857, and made valuable improvements thereon, and, upon proof thereof, received from the county judge a pre-emption certificate.dated June 1, 1857. Hanna held possession of the land until March 30, 1868, when he assigned his pre-emption certificate to plaintiff for a valuable consideration.

In 1862 the county entered into a contract with the American Emigrant Company for the sale of the lands, and subsequently conveyed the property to this company. This contract provided that the rights of persons holding pre-emptions upon lands should be protected, and that the company should convey to persons holding pre-emptions the land claimed by them. Plaintiff made valuable improvements upon the lands, and occupied them since the pre-emption certificate was assigned to him, and the county has recognized his right and title by the assessment and collection of taxes thereon.

On the 11th of March, 1869, the Emigrant Company conveyed the lands to plaintiff upon his pre-emption claim, and the payment of the sum of one dollar and twenty-five cents per acre, the price at which the land was to be sold by the county to pre-emptioners. The petition alleges that plaintiff has been always ready to pay the purchase price of the lands, and that if the court holds that his payment to the Emigrant Company does not discharge the claim of the county for the price of the lands, he is ready and willing to pay the same to the county. He alleges that he acquired and now holds the lands in good faith. He charges that the county is about to dispose of the lands, and asks that it be enjoined from so doing, and that the title be quieted, and the defendant be required to convey the lands to him.

The answer of defendant denies the validity of the sale of the lands by the county to the American Emigrant Company. It also denies the validity of the pre-emption of the lands by Hanna, and the good faith of plaintiff in the assignment of the pre-emption certificate to him. It charges that the lands were assessed to plaintiff through his procurement, and avers

that before the suit was commenced the defendant tendered to plaintiff the amount paid by him for taxes on the lands. It is also alleged that plaintiff instituted an action to set aside the sale of the lands to the Emigrant Company, which was transferred to the United States Court, wherein the transaction was held to be void for fraud. The certificate of pre-emption of the lands is shown to have been issued for more than ten years. Plaintiff's rights thereon, it is claimed, are barred by the statute of limitations.

The plaintiff supports his right and title to the lands upon two grounds : *First,* the pre-emption by Hanna. He claims that under this pre-emption he is entitled to a deed for the lands, if the title has not been vested in him by virtue of the contract of sale to the Emigrant Company, and the deed by the company to himself. *Second,* the contract and deed made by the county to the Emigrant Company. We are required to examine separately these sources of right and title to the lands involved in the action. The facts pertaining to each will be stated in our separate discussion of the two grounds upon which plaintiff seeks relief.

II.   The statute authorizing the pre-emption of swamp and other State lands provided that "any person who shall have a

1. SWAMP
lnnds : pre-
emption : set-
tlement.

bona fide claim, by actual settlement or improvement," upon any such lands, "and any *bona fide* assignee of such person shall be allowed to enter the same" by paying therefor one dollar and a quarter per acre. The person seeking a pre-emption right was required to prove his claim "to the satisfaction of the proper county judge, by any testimony which shall be satisfactory to said judge." Rev., §§ 973, 974. The claim which would support a pre-emption under the statute was based upon "actual settlement and improvement." The exact import of these words must be understood. Settlement upon lands can be made only by devoting them to the purpose of a home or dwelling. No one can be a *settler* upon land who does not occupy it in connection with his dwelling, as a part of his

farm.   Improvement of lands is made by converting them from their natural wild condition to a state of cultivation. Lands would not be *improved* by cultivation for one year and permitting them again to become wild.   Actual settlement or improvement is made when the land is really and in truth occupied by the settler, or converted from a state of nature to a condition of cultivation.   To entitle one to the benefits of the statute just cited he must in truth have occupied the land or made permanent improvements thereon.

In the case before us, Hanna, in 1857, broke three or four acres of the one hundred and twenty involved in this case, and raised a crop of sod-corn that year.   He did not live upon the land, and it was not part of a farm owned by him.   No fences were made upon the land, nor was it improved in any way. It was never cultivated, for sod-corn requires no cultivation. No attempt of any kind was made to raise another crop upon the land, and it was permitted to become again wild.   More than ten years after this breaking Hanna assigned his pre-emption certificate to plaintiff.   It is very plain that the improvement made by Hanna was not such as the law required to support a pre-emption.   He, therefore, had no *bona fide* claim by actual settlement, and his certificate was procured through fraud, for the county judge issued that paper upon a false claim and false testimony that there was permanent, *actual* improvement made by Hanna upon the land.   *Wilson v. McLernan,* 20 Iowa, 30; *Rogers v. Vass,* 6 Iowa, 405; *Colvin v. McCasky,* 9 Iowa, 585; *Givens v. Decatur Co.,* 9 Iowa, 278.

III.   It is insisted by plaintiff that the county judge, in issuing the pre-emption certificate, acted in a judicial capac-

2. ——: ——: ity, and his decision cannot be questioned in this
fraud.          case.   Let it be conceded that the county judge, in passing upon Hanna's application for a pre-emption certificate, acted in a judicial capacity, and that his decision has the effect of a judgment of a court.

We enter into no examination of the correctness of this proposition, but admit it for the purpose of this case only. Let it be further admitted, in the same way, that the county was a party to the proceeding before the county judge wherein the pre-emption certificate was issued, and cannot, therefore, impeach the judgment in a collateral proceeding. But defendant's answer is in the nature of a cross-petition, and prays general relief; it charges fraud in the procuring of the pre-emption certificate, and assails it on that ground. Here is a direct attack upon the judgment of the county judge in a proceeding brought to establish its fraudulent character. It may be thus assailed for fraud. This conclusion, we think, is supported by elementary principles; but we believe it is a generally recognized doctrine that a party whose rights are affected by a judgment, void for any cause, or even erroneous, which he could not reverse or review upon appeal or writ of error, may show its invalidity or error in any action wherein it is brought in question. *Vase v. Morton*, 4 Cush., 27; *Leonard v. Bryant*, 11 Met., 370; *Griswold v. Stewart*, 4 Cow., 458.

The statute authorizing the county judge to issue pre-emption certificates did not provide for a review of his action in granting a pre-emption certificate upon appeal or writ of error, to be prosecuted by the county wherein fraud could have been shown in order to set aside his judgment or decision. It may, therefore, be shown in any collateral proceeding wherein the validity of a pre-emption is brought in question. While it has been held that an appeal may be prosecuted by a person to whom the county judge denies a certificate of pre-emption (*Givens v. Decatur County*, 9 Iowa, 278), it has not been decided that the county may appeal from the action of the Circuit Judge in granting a certificate.

IV. We now approach the examination of plaintiff's title to the land under the deed from the American Emigrant Company.

On the 3d day of September, 1862, the county entered into

a contract with the Emigrant Company for the sale of all the swamp lands. On the 7th day of September, 1863, it conveyed three thousand six hundred and eighty acres of these lands to the company. The lands in controversy were not covered by the deed, which, however, contains the following covenant:

3. ——: ——: contract.

"And the said party of the first part doth further covenant and agree that all the lands within the said county that may be at any time duly selected as swamp and overflowed lands, and all such lands as may not be included in this conveyance, if any, the party of the first part will at any time convey, by deed similar to this conveyance, on request of the American Emigrant Company."

March 11, 1869, the company conveyed the lands by deed to plaintiff. It is shown that this conveyance was based upon plaintiff's pre-emption claim, the company undertaking in its contract of purchase to convey all lands upon which such claims rested to the holders thereof.

It will be observed that the title to the lands in controversy is held by the county, no deed therefor having been executed under the contract. The plaintiff acquired no title by the deed of the company to him. That deed operated to transfer to the plaintiff the equity held by the company in the lands, and nothing more. This equity rested upon the contract with the county for the purchase of the lands.

As we have before stated plaintiff claimed a conveyance of the land on this ground: that he held a pre-emption, and under his supposed right based thereon the deed by the company was executed to him. As we have seen his pre-emption was void for fraud. Now, if we concede that the deed of the company was sufficient to convey an equity, plaintiff cannot enforce it for the reason it was acquired by him through the pre-emption, which, being fraudulent, secured to him no right. If this pre-emption gave him no right to the lands as against the company, the deed of the company made to perfect plaintiff's claim, based upon the pre-emption, and to confer upon

him the title, cannot be regarded as valid, for the reason that it is based upon the fraudulent pre-emption. We cannot, therefore, hold that plaintiff acquired, as against the county, any right to the lands under the deed of the Emigrant Company.

The conflicting right of the county and the company to the lands will be finally settled in the cause now depending on appeal in the United States Supreme Court. If the county prevail plaintiff's claim to the lands is cut off. We are not required to determine his rights in case the Emigrant Company be successful.

V. The plaintiff paid certain taxes levied upon the lands in question. It is claimed that the collection of these taxes estops the county to set up title against plaintiff. It is shown that the assessment of the land was made by the proper county officer, for the reason that it was known to such officer that plaintiff had bought the land of the American Emigrant Company, and it was not known that the county had never deeded the property to that company, and that if he had known this fact he would not have assessed the land. It is further shown that the county appropriated a sufficient sum to repay plaintiff for the money expended by him in the payment of taxes upon the land. It does not appear that plaintiff was misled or induced by the assessment of the land to purchase it; he seems to have relied upon the pre-emption certificate and the deed from the Emigrant Company, and not upon the acts of the county in assessing the lands and collecting the taxes levied thereon. We think the county is not estopped to set up title against plaintiff, and that the facts above stated distinguish this case from those which hold that the assessment and collection of taxes, under other circumstances, will estop the counties from setting up title to the lands taxed. See *Howard County v. Bullis*, p. 519, *post*.

VI. The question arising upon the statute of limitations, and other questions discussed by counsel, need not be considered.

We reach the conclusion that the decree of the court below is erroneous.    It is reversed, and the cause is remanded for a decree in accord with this opinion.

REVERSED.