STEWART LUMBER COMPANY, Appellant, v. FRED DOWNS, SOPHIA DOWNS, FARMERS STATE BANK and M. REED.

Judgments: CORRECTION AT SUIT OF A THIRD PARTY: FRAUD AND COLLU-
SION. Where a judgment on default has been regularly entered, but for more than the amount due, a stranger thereto can not by an independent suit challenge the judgment and have it corrected as to the amount, on a simple showing that he is unable by reason of the same to collect his claim; he must go further and show that the judgment was entered through the fraud and collusion of the parties thereto.

Evans, C. J., in concurring opinion, Deemer, J., concurring in the result.

*Appeal from Crawford District Court.*—HON. Z. A. CHURCH, Judge.

Saturday, May 8, 1909.

The opinion states the case.—*Affirmed.*

*Conner & Lally,* for appellant.

*W. C. Saul,* for appellees.

Sherwin, J.—The petition alleged that on the 24th of October, 1904, the defendants, Fred Downs and Sophia Downs, made and delivered to the plaintiff their promissory note for $1,008, and secured the same by a mortgage on real estate. Judgment for the amount thereof and for a foreclosure of the mortgage was asked against said defendants. In an amendment to the petition it was alleged: That in 1903 the defendant M. Reed obtained a judgment against her codefendant, Fred Downs, for the sum of $770.45 and costs. That prior to the rendition of said judgment Downs had made payments to M. Reed on her claim against him aggregating about $450, which she failed and refused to credit and indorse thereon, although the same should have been so indorsed. That the judgment against Downs was rendered on his default, and without any knowledge on his part that he had not been given credit for the payments so made. The petition further alleged that the action of the said M. Reed in so failing and refusing to credit Downs was in fraud of the plaintiff's rights. The plaintiff prayed that the sums so paid by Downs be credited on the Reed judgment. The defendant Reed demurred to the amended petition, and the demurrer was sustained. The plaintiff thereupon electing to stand on its pleading, judgment was entered dismissing its petition as to M. Reed, and this appeal followed.

For the purposes of this case, it must be conceded that the Reed judgment against Downs was so far as the amount thereof is concerned the result of fraud or mistake.

The demurrer admitted that it was too large by the aggregate amount of the payments alleged to have been theretofore made by Downs, and that Downs suffered a default judgment to be taken against him, believing that he had been properly credited with the amount so paid. If the payments were in fact made as alleged, one of two things must be true: The defendant Reed took the judgment for the amount she did either through fraud or mistake. At the time such judgment was taken, the plaintiff was a creditor of Downs, and its security was seriously impaired, if not wholly destroyed, by such erroneous or fraudulent judgment.

The question for determination, then, is whether the plaintiff may have the judgment corrected as to its amount in this direct equitable proceeding. That this suit is a direct attack on the judgment in the respect indicated can not, we think, be seriously questioned. A direct attack on a judgment is an attempt to amend, correct, reform, vacate, or enjoin the execution of the same in a proceeding instituted for that purpose; and it is a general rule that, when the elements of fraud or mistake are involved in the issue, the attack is direct. *Earle v. Earle*, 91 Ind. 27. *Thompson v. McCoekle*, 136 Ind. 484 (34 N. E. 813, 36 N. E. 211, 43 Am. St. Rep. 334); *Morrill v. Morrill*, 20 Or., 96 (25 Pac. 362, 11 L. R. A. 155, 23 Am. St. Rep. 95). The plaintiff was not a party to the suit between Reed and Downs, nor could it have been made a party because at that time its claim against Downs was not secured by the mortgage which it now seeks to foreclose. Nor would it have been a necessary party had it been otherwise, for the suit of the defendant Reed was based on notes which were unsecured. Not being a party nor a privy to the action or judgment against Downs, the plaintiff could not have the judgment reviewed by appeal or writ, and hence its only remedy lies in an appeal to a court of equity to have the same corrected. That a stranger

to a judgment which is the result of fraud or collusion whose rights are affected thereby may so proceed we think is well settled by the authorities and sustained by equitable principles which can hardly be denied. The principles of natural justice and sound morals will not permit a man to gain an advantage by fraudulent acts; and when one has gained an unfair advantage in proceedings at law by fraud or misconduct, whereby the court is made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of such unfair advantage. It would be grossly inequitable to allow a fraudulent judgment to defeat a just claim against the judgment debtor, and the authorities are practically unanimous in holding that a judgment procured by the fraud and collusion of the judgment creditor and debtor may be attacked by a creditor who will be injured if it be allowed to stand. The petition, in substance, alleged that Mrs. Reed took a judgment against Downs for $500 more than was due her, and that by so doing she perpetrated a fraud on the plaintiff and on Downs. If such was the fact, and the demurrer admitted as much, she should not in my judgment be permitted to profit thereby to the detriment of the plaintiff.

On the proposition that a stranger to a judgment may impeach it for fraud or mistake, see the following cases: *Marine Ins. Co. v. Hodgson,* 7 Cranch, 332 (3 L. Ed. 362); *Beeler v. Bullit,* 3 A. K. Marsh. (Ky.) 280 (13 Am. Dec. 161); *Downs v. Fuller,* 2 Metc. (Mass.) 135 (35 Am. Dec. 393); *Nason v. Blaisdell,* 12 Vt. 165 (36 Am. Dec. 331); *Vose v. Morton,* 4 Cush. (Mass.) 27 (50 Am. Dec. 750); *Scoville v. Brock,* 79 Vt. 449 (65 Atl. 577, 118 Am. St. Rep. 975); *Delaney v. Brown,* 72 Vt. 344 (47 Atl. 1067); *Inman v. Mead,* 97 Mass. 310; *Sargent v. Salmond,* 27 Me. 539; *Edson v. Cumings,* 52 Mich. 52 (17 N. W. 693); *Bergamn v. Hutcheson,* 60 Miss. 872; *Mechanics' Nat. Bank v. Manufacturing Co.,*

33 N. J. Eq. 486; Freeman on Judgments, section 336, 337, 512; Freeman on Executions (3d Ed.) section 136; *Bixby v. Adams County,* 49 Iowa, 507. That fraud or mistake in the amount of a judgment may be corrected by a court of equity is settled by our own decisions. *Bernard & Co. v. Douglas et al.,* 10 Iowa, 370; *Partridge v. Harrow,* 27 Iowa, 97; *Barthell v. Roderick,* 34 Iowa, 517; *Snyder v. Ives,* 42 Iowa, 157; *Bixby v. Adams, supra; Milliman v. Eddie,* 115 Iowa, 530. In *Bernard & Co. v. Douglas* the plaintiffs brought an action in equity to set aside a judgment by confession. They were junior creditors and strangers to the judgment; but it was held that they might maintain the action. The transaction under consideration is analogous to fraudulent conveyances or to collusive and fraudulent legal proceedings which are everywhere held to be subject to attack by existing creditors. A judgment obtained by fraudulent and collusive legal proceedings is no more sacred than any other form of fraudulent conveyance and may be attacked by creditors, no matter how legal it may be in form. 20 Cyc. 397, and cases cited.

The appellee urges that, under section 3440 of the Code, the judgment against Downs can not be modified. The section was evidently intended to apply only to parties or privies to the judgment, and not to those in the plaintiff's situation. Otherwise there could be no attack on a fraudulent judgment by any stranger thereto, no matter whether a creditor or not.

The sufficiency of the petition is challenged and it must be admitted that it is not clear and definite ·in its allegations of either fraud or mistake. But it was not properly attacked in the trial court, and, for the purposes of this appeal, I am of the opinion that it should be held to fairly present the issue discussed. A majority of the court disagree with me as to the right of the plaintiff to have the judgment corrected as to its amount, and hold

that a judgment rendered for a larger amount than is due
the judgment creditor can not be challenged or corrected
at the suit of a stranger thereto, unless it be shown that
it was procured by the fraud and collusion of the judg-
ment debtor and creditor.   This conclusion is based on
the general rule that, where no fraud or collusion has been
shown in the recovery of the judgment, it is conclusive of
the fact and the amount of the indebtedness of the judg-
ment debtor, and can not be collaterally impeached by third
persons in a subsequent suit where such indebtedness is
called in question.   23 Cyc. 1286-1287, and cases cited;
Freeman on Judgments, sections 335, 336; Black on Judg-
ments, section 293, 294, 317.   It is true that the petition
does not allege fraud and collusion on the part of Mrs.
Reed and Downs.   It goes no farther than to allege that
a judgment by default was taken against Downs for a
much larger amount than was due Mrs. Reed from him,
and that such act on the part of Mrs. Reed was in fraud
of the plaintiff's rights.

A majority of the court think the judgment should
be affirmed, and it is so ordered.—*Affirmed.*

DEEMER, J.—I concur in the result.

EVANS, C. J. (specially concurring).—It is clear to
me that the trial court properly sustained the demurrer
to the petition, and that its order to that effect should be
affirmed.   I concur, therefore, in the result announced.   I
am not willing, however, to place the affirmance upon the
grounds stated in the opinion of my brother Sherwin,
J., nor am I wholly satisfied with the statement of the
record as therein set forth.

Whether a judgment may be attacked by a creditor
of the judgment debtor upon any other ground than fraud
and collusion, or whether it may also be attacked by such
creditor on the ground of accident or mistake, we have no

occasion in this case to determine.   For the purpose of this case, it may be conceded that an existing creditor may attack the judgment of a third party against an insolvent debtor for fraud, collusion, accident, or mistake upon a proper showing that such judgment operates as a legal fraud upon him.   I am not now prepared to say that this is not the correct rule.   But the rule in this form will not save the plaintiff's case as made by its petition. Defendant Reed's judgment against Downs was entered in November, 1903.   Plaintiff's action was brought to foreclose a note and mortgage for $1,008, dated in October, 1904.   On the face of the papers, therefore, plaintiff was not an existing creditor at the time Reed's judgment was entered.   This statement, however, is to be qualified later in this opinion.

The issue as to the validity of Reed's judgment is tendered by plaintiff in its amendment to petition, and in the first 11 paragraphs thereof, which are as follows:

### Amendment to Petition.

Paragraph 1:   That heretofore and during the year ending March 1, 1897, the defendants Fred Downs and wife were occupying under a lease from their codefendant, M. Reed, at the cash rent of $600, the real estate described in said plaintiff's petition, for the rent of which for the year named he executed and delivered to said M. Reed two promissory notes, of date October 8, 1895, one for $200, maturing in 1896, and one for $400, maturing on the 1st day of January, 1897.

Paragraph 2:   That the first-named note was paid by the said Fred Downs to his codefendant on or about the ——— day of ————, 1896, and of the $400 note named $300 was paid on the 28th day of June, 1897. That for the year ending March 1, 1900, the said Fred Downs and wife occupied said real estate aforesaid under the lease from their codefendant, M. Reed, for a crop rent, excepting 40 acres of pasture, for which the sum of $100 was agreed to be paid as rent therefor for said year

as evidenced by a certain promissory note, of date September 5, 1898.

Paragraph 3: That during the year 1900, under an agreement by and between the defendant Downs and his codefendant, Reed, certain buildings on said real estate were moved by the said Downs, in consideration of which the said defendant Reed agreed to credit the said $100 rent for the pasture referred to in paragraph 2 the sum of $50.

Paragraph 4: That on or about the ——— day of ———, 1898, the defendant Downs paid to his codefendant the sum of $100 to apply on the notes and rent hereinbefore referred to.

Paragraph 5: That afterwards, and on or about the ——— day of September, 1893, the defendant M. Reed commenced in the district court of Iowa in and for Crawford County a certain action against her codefendant, Fred Downs, on the $200 note, and the $400 note referred to in paragraph 1 hereof, and in said action on the 24th day of November, 1903, recovered judgment for $770.45, with interest at 8 percent, $40.40 attorney's fees, with interest at 6 percent, and $7.40 costs as shown by page 108 of Appearance Docket Y of the records of this court, to which reference is hereby made, and which is made a part thereof.

Paragraph 6: That no defense was made to said action by the defendant Downs, as plaintiff is informed, believes, and so avers the fact to be, he, the said Downs, fully believing that the indorsements were made on said notes, and that judgment for the actual amount owing, to wit, $50, and no more would be rendered in the case.

Paragraph 7: That in truth and in fact the plaintiff in said cause (M. Reed, one of the defendants herein) failed and refused, and still fails and refuses, to indorse upon said notes or credit upon said judgment the said items mentioned, and, in fraud of this plaintiff's right, allowed said judgment to stand of record for the full amount thereof as hereinbefore stated against the said defendant Downs, and against the premises covered by plaintiff's mortgage, the foreclosure of which is sought herein.

Paragraph 8: That the defendant Fred Downs is insolvent, and has no means of paying his debts, present

or prospective, other than his equity in the real estate described herein. That equity and good conscience demand that the defendant M. Reed credit upon said judgment as of the several dates of payment the following items, to wit: $300 June 28, 1897; $100 October 15, 1898; $50 February 20, 1900.

Paragraph 10: That plaintiff avers that there is in this case, as between M. Reed and the plaintiff, the question of conflicting liens, and that, while the judgment in favor of M. Reed appears to be for the sum of $770.45, that in truth and in fact said judgment should be for the sum of $50 only, with interest thereon from the 1st day of January, 1897.

Paragraph 11: That, while said judgment in point of time antedates the date of plaintiff's mortgage herein, yet, by reason of the premises, there should be credited upon said judgment the sum of $450, and for the balance only of $50 should judgment be allowed to stand against the premises covered by plaintiff's mortgage.

This amendment to petition was duly verified.

Although the petition alleges that Downs was insolvent at the time the petition was filed in November, 1904, it wholly fails to allege that he was insolvent at the time Reed's judgment was entered. As an attack upon Reed's judgment, it alleges that it was entered upon certain promissory notes held by Reed against Downs; that Downs had a partial defense thereto, in that he had made partial payments thereon which Reed had "refused" to indorse or credit thereon. It also alleges that Downs made no defense, "believing the indorsements were made on said notes," and that judgment would not be rendered for more than was due. It must be presumed in support of the jurisdiction of the court that the original notice served upon Downs advised him of the amount for which Reed would take judgment. There is no allegation in the petition that Downs was prevented from setting up the alleged defense by any act of Reed, or by any accident or

surprise or mistake of his own, nor is there any allegation of collusion between Reed and Downs nor of fraud on the part of either of them. The petition charges no more than that Downs had a partial defense which was wholly ignored in the judgment. This of itself furnishes to plaintiff no legal ground of attack. The validity of such defense was necessarily covered by the adjudication.

A question is raised in the opinion as to whether the petition was properly attacked. The demurrer was a general equitable demurrer, and conformed to the requirements of the statute in all respects. It called in question the sufficiency of the allegations of the petition to entitle plaintiff to the relief demanded. I am unable to see how it may be regarded as having cured in any sense the lack of allegations essential to plaintiff as grounds of attack upon the judgment. I have said that upon the face of the papers the plaintiff was a subsequent, and not an existing creditor of Downs, at the time Reed's judgment was entered. It appears from the petition as amended, however, that the plaintiff's note and mortgage include an indebtedness for certain lumber and material furnished for the improvement of the real estate involved in this controversy, and that this was an existing account at the time the judgment was rendered, and that the plaintiff had, then, a right to a mechanic's lien therefor which he in due time perfected in accordance with the provisions of the statute. This account for lumber and material antedated Reed's judgment. In so far, therefore, as he was an existing creditor, he had a valid mechanic's lien which was superior to Reed's judgment lien, and he was in no manner prejudiced by Reed's judgment. He was in no position at that time, therefore, to attack Reed's judgment, for he had no interest to subserve by such attack. He afterwards chose to waive his mechanic's lien and blend his account with subsequent indebtedness, and to include the whole in the note and mortgage in suit bearing 8 percent

interest and attorney fees. If this were done through mis-
take or misunderstanding or in ignorance of Reed's judg-
ment, such fact could be brought to the consideration of
the court by proper allegations; but no such claim is made.
The petition and the amendment pray for the foreclosure
of the mortgage. The amendment prays that the lien of
the mortgage to the amount of the mechanic's lien be de-
clared superior to the judgment, but no reinstatement or
foreclosure of the mechanic's lien is prayed.

There is a manifest reason for this failure, in that
section 3429 of the Code prohibits the joining of any other
cause of action with an action to enforce a mechanic's
lien. Under this section the plaintiff could not join a fore-
closure of his mechanic's lien and a foreclosure of his mort-
gage for other indebtedness in the same action. Plaintiff
has therefore chosen to stand upon its mortgage rather
than upon its mechanic's lien. The amendment to the
petition also prays that plaintiff's mortgage take priority
over Reed's judgment as to the barn which was built with
the lumber and material furnished, and that the plaintiff
be permitted to remove the same from the premises. What
I have already said is decisive of this contention. There is
a further reason why such relief can not be granted. The
record before us discloses the cause came on for trial in
the court below on April 15, 1905, and that the case was
then "tried as to all of the defendants other than the de-
fendant Reed, as to whom the case was continued." As a
result of such trial, judgment was "rendered for the
amount of plaintiff's claim as to all the defendants other
than M. Reed, as to whom it was continued." The trial
as to defendant Reed was had in March, 1906. The de-
murrer which was sustained was filed by defendant Reed
alone.

Plaintiff's appeal is from the order and judgment sus-
taining Reed's demurrer and dismissing the petition as to

him.  The other defendants are not in this court.  They did not appear in the lower court by any pleading filed.

Plaintiff makes no complaint of the judgment rendered in its favor against the defendant Downs nor has it appealed therefrom.  It will be noted that the judgment against defendant Downs contains no provision permitting the plaintiff to remove the barn from the premises.  This is a question of vital interest to him as fee owner of the land.  Plaintiff could not establish its mechanic's lien upon the barn with right of removal as against Reed without first establishing such right as against the principal defendant Downs.  The owner of the property is always a necessary party to an action to foreclose a mechanic's lien.  Even if Downs could be regarded as still in court in March, 1906, at the time of the trial on Reed's demurrer, and even though the court had power at that time to enlarge the judgment in plaintiff's favor as against Downs and to permit the removal of the barn as prayed, the fact remains that Downs is not in this court.  No notice of appeal appears to have been served upon him.

In view, therefore, of the state of the record as herein explained, I dissent from the statement of the main opinion that plaintiff's security "was seriously impaired if not wholly destroyed" by the taking of Reed's judgment.

On the grounds above stated I concur in the affirmance.