JOHN HEISINGER et al., Appellees, v. MODERN BROTHERHOOD OF AMERICA et al., Appellants.

**JUDGMENT: What Constitutes Direct Attack.** A reply to a defensive
1  plea of adjudication, to the effect that such alleged adjudication was obtained by specified fraudulent and collusive means, constitutes a *direct* and not a *collateral* attack on the judgment.

**INJUNCTION: Vacation of Temporary Writ—Balance-of-Convenience**
2  **Rule.** A temporary injunction restraining a benevolent insurance association from increasing rates and from suspending the insured plaintiff will not be vacated when such vacation might irreparably injure plaintiff, while a continuance of the order will not injure defendant. Especially is this true when plaintiff's material allegations of fraud stand undenied on the record.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

OCTOBER 2, 1920.

REHEARING DENIED OCTOBER 1, 1921.

THE plaintiffs, as members of the defendant association, brought this action, on behalf of themselves and others similarly situated, to enjoin the association and its officers from enforcing the provisions of certain of its by-laws adopted by the supreme lodge, which increased the rates of assessment of certain of its members and provided for their suspension in the event of their failure to pay said increased rates, and to enjoin defendants from suspending plaintiffs and members similarly situated. A temporary injunction was issued without notice, as prayed. Defendants answered, and filed a motion to dissolve the temporary injunction. The motion was overruled, June 24, 1918; but the injunction was modified so that any member of defendant association who desired to change his policy and accept new rates or a new policy, with consent or solicitation of the association, should have that privilege, and so that the association might withhold such amounts as it had assessed against various policies until the determination of this action, in such death losses or other claims in policies as might occur, pending the final judgment of this case; and plaintiffs were ordered to file a reply, if any, 20 days before the September, 1918, term. The ruling on motion to dissolve was made before the reply was filed, if it has been filed, and it seems not to be set out in the abstract in this case,—at least, it is not indexed, and we do not find it in the 200 pages or more of pleadings in this and the other cases. On June 21, 1918, or three days before the ruling, plaintiffs filed an amendment to the petition, setting up the alleged fraud of defendants in amending the by-laws, which amendment is hereinafter referred to. As we understand the record, defendants have not denied such allegations by any answer to such amendment. From the overruling of the motion, the defendants appeal.—*Affirmed.*

*C. H. E. Boardman, Geo. W. Miller,* and *Sam Sparrow,* for appellants.

*E. C. Barber, G. P. Linville,* and *R. P. Scott,* for appellees.

PRESTON, J.—The case is not before us on the merits, and the ultimate question whether, under the applications, the policies, and the by-laws, the rates could be raised, is not yet before us, unless, as we understand appellants to contend, this question may and should be now determined, as a matter of law. Appellees contend, on the other hand, that there are questions in the case as now presented which may not be so determined; that they are entitled to a hearing on the merits; and that the temporary injunction should be continued until final hearing. The issues as now presented, and as stated by counsel, are whether appellees were, in the first instance, entitled to the issuance of a temporary injunction; and second, whether, upon the face of the petition, answer, and affidavit on behalf of plaintiffs, the appellees are entitled to a continuance of the temporary injunction. The grounds of the motion to dissolve were:

"First. Because said injunction was improperly and improvidently issued.

"Second. Because, upon the face of the petition and answer herein, plaintiffs are not entitled to injunctive relief.

"Third. Because, upon the pleadings filed herein, said temporary injunction is contrary to law.

"Fourth. Because the issues raised by the pleadings herein have all been adjudicated, and such former adjudication is a bar to the granting of injunctive relief here."

The pertinent facts, stated as briefly as may be, under the very voluminous record, are, substantially, that the Modern Brotherhood of America is a fraternal beneficiary association, incorporated under Title IX, Chapter 9, of the Code of 1897. It has a ritualistic form of work. Its laws are made and its affairs controlled by its supreme lodge conventions. Appellee Sweeney became a member in 1898, Sandvig, in 1900, and Heisinger and Detrick, in 1903. Their contracts of insurance contain an agreement that they will be bound, not only by the by-laws which were in force at the date of their application for membership, but by those which may be thereafter lawfully enacted. Their applications are a part of the certificates. Appellants allege that, prior to 1911, the society found that the rates of assessment were inadequate to enable it to meet its

obligation and mature its benefit certificates by their payment at the death of its members, and that the supreme convention, in August, 1911, by amendments to its by-laws, adopted a table of monthly rates of assessment, based upon the National Fraternal Congress Table of Mortality. The rates so adopted were higher than the former rates. Those who were then members, including appellees, were given four options, whereby they could transfer and pay said increased rates. Appellee Heisinger's certificate was for $1,000, and the assessment was 50 cents per month. It is alleged by appellees that he has paid all lawful . assessments at all times, and without default, except the reserve deficiency special assessment of March, 1918, sent by the society to him, in the sum of $424.42. It is further alleged that certificates of other appellees, and approximately 10,000 others similarly situated, contain practically the same terms and conditions, except the name, amount, and rate; that appellants are wrongfully and illegally attempting to enforce the payment of said assessments, or create special liens against the certificates, in violation of the terms and conditions of the certificates, and thereby to deprive said members of their rights under their certificates; that said members have never consented to any change in the assessments, as shown by their certificates, nor to the attempted making of the reserve deficiency special assessments by the society; but that they have at all times objected to any change, either in the terms or rates; that appellants are attempting to impair the contracts of insurance of such members; that for appellants to carry out the terms of the reserve deficiency assessment would wrongfully confiscate the rights of appellees in and to the funds and promised benefits to the society, and at a great loss to them in having their certificates declared void, and would work irretrievable injury to such members; that they have no adequate remedy at law for such injuries, and for the threatened expulsion of such members. It is alleged further that the estimated increase in the rate is 350 to 400 per cent over the rates named in their certificates; that the society held its conventions in which the rates were raised, in Colorado, in 1911, and in Missouri in 1915, without the state of Iowa, and contrary to its articles of incorporation and the laws of Iowa; that no necessity existed to increase the

established rates; that, at the conventions of 1911 and 1915, the society authorized, unlawfully and illegally, the issuance of term policies, paid-up insurance, and extended insurance, contrary to and in violation of the laws of Iowa, and thereby gave preference to certain members, and created different options, in violation of the contract rights of appellees and other members similarly situated; that the appellant and its officers, since 1910, have recklessly and in an unbusinesslike manner, illegally and extravagantly, expended the funds of the society in their attempt to enforce the Table of Mortality against its members, and particularly against appellees and others similarly situated; that said table of rates is prohibitive, and has caused 100,000 members to drop out. It is further alleged by appellees, and admitted by appellants, that the defendant society was not insolvent.

In December, 1912, one Brown and another member of appellant society instituted an action in Clinton County, Iowa, against the defendant society and its officers, to enjoin the enforcement of said rates; and the decree entered therein in June, 1913, was favorable to the defendants. Appellees contend that this decree was collusive, fraudulent, and void, for that an attorney's fee of $1,000 was paid plaintiffs' attorney in that case, out of the trust fund of the society, and that no exceptions were taken to said decree, and that it was agreed, prior to the entry of said decree, that no exceptions should be taken, and that no appeal should be taken. But since appellants do not rely upon that decree as an adjudication, we shall not go into further detail as to it. At the convention of the supreme lodge, in August, 1915, the by-laws were again amended, extending to the members who had failed to transfer under the by-laws of 1911, three additional options. In December, 1914, one Bills and others brought an action at law in the district court of Linn County, against the defendant society and its officers. Thereafter, and on December 30, 1915, after the convention and proceedings of August, 1915, an amendment to the petition was filed, defendants filed answer thereto, and the cause was transferred to the equity calendar. The decree entered therein, dismissing the petition, is pleaded and relied upon by defendants as an adjudication of the questions involved in this case. It is alleged that the same ques-

tions as now presented by these plaintiffs, in regard to the impairment of the contracts, the legality of the rates, and so on, were adjudicated. The decree in that case, filed on the same date, to wit, December 30th, finds that the conventions were legally held; that, because of the inadequacy of the old rates, there is a large deficiency, and it was necessary for the society to amend the by-laws; that the rates are not exorbitant or excessive, but are reasonable and necessary; that the amendments to the by-laws do not impair the contracts. No judgment for costs was rendered in the decree, and there was no exception. Some of these matters are set up by defendants herein in their answer; others of the pleadings, etc., are set up by copy in plaintiffs' resistance to motion to dissolve, and are shown by affidavit to be true copies. It is also alleged by plaintiffs that there was no hearing on the merits in the Bills case, and that the pretended hearing consumed but a few minutes, or less than an hour's time; that, before the entry of such decree, there was a secret agreement entered into by collusion between one Corliss, one of the plaintiffs in the Bills case, for himself, and as the pretended agent of the so-called insurgents on the one hand, and defendant society, by certain of its officers; and that, under said agreement, there was paid by the last-named parties to said Corliss, or to one of his attorneys of record, the sum of $7,000; that, by the acts of said parties, there was fraud committed upon the court, and such a fraud as completely impairs the validity of the Bills decree; that no reference in said decree is made to members of appellant society similarly situated. Because of the last, and because of the alleged fraud, plaintiffs herein say that they are not bound by the decree therein, as parties similarly situated. The plaintiffs in the instant case filed their affidavit, which is a part of their resistance to the motion to dissolve, in which they state that they were not parties plaintiff or defendant, in either the Bills or the Carl case, and that they neither participated in nor had anything to do with said cases, and that at no time did they authorize any person or persons or attorneys to represent them on the alleged hearing of said cases, or to appear for them. Appellees contend also that the title of the action shows that it was brought for the benefit of the appellant society, against appellant society and its officers, and not

for the benefit of the aggrieved members. The original petition is not set out in the abstract, but appellees contend that a printed copy thereof, recently found, does not show that the suit was brought for the individual plaintiffs and the members similarly situated. In response to these several matters, appellants contend, in their reply argument, that this is an attempt by plaintiffs to attack collaterally the said judgment and the Carl judgment as well, and that they may not be so attacked; and further, that the attack must be made in the court and county where the decrees were entered.

On September 18, 1916, N. P. Carl and others brought action in the district court of Linn County against this association and others, on behalf of themselves and others similarly situated, asking that the appellant society and its officers be enjoined from putting the higher rates in force, on substantially the same grounds as relied upon by appellees in the instant case; and the issues tendered by the answer of defendant were substantially the same as herein, except that, in the Carl case, the defendants pleaded the first, or the Brown case, as well as the Bills case, as an adjudication. In that case, the plaintiffs filed a reply, controverting the answer of the defendants, and particularly the alleged adjudications, pleading the invalidity thereof because of fraud, collusion, and secret agreements, without the consent of these plaintiffs or those of the society similarly situated, and setting out the facts in detail, and further, that there was no authority from the supreme convention or its rules, to compromise or settle any suits brought by the members of the organization. Defendants in that case filed motion to strike portions of plaintiffs' reply. Plaintiffs Carl and others had attached to their reply certain interrogatories, to be propounded to the defendants' officers, to which defendants filed exceptions. The defendants filed a motion to submit their pleas in bar, which recites, among other things, that plaintiffs, in their petition, complain of certain irregularities; and that, in response thereto, defendants answer and set forth all matters relating thereto, in regard to conventions, adjustment of rates, enactment of by-laws and amendments; and that all such questions were adjudicated in the Brown and Bills cases, referred to in the defendants' pleadings; and that, if such pleas of final adjudication

are sustained, it practically disposes of the case, except one or two minor issues; that, in order to expedite the business of the court, and relieve it of a long and tedious trial, involving the examination of papers and records, the pleas in bar submitted by the defendants should be first heard, and the sufficiency thereof established, before proceeding further.  By such motion, they asked the court to enter an order directing that the pleas of former adjudication be first heard, before proceeding further in the cause, and before hearing any other matters in connection therewith, to the end that only such matters as are not involved in the matters claimed to have been adjudicated may occupy the court upon the submission of the cause upon the merits or issues remaining after the plea of former adjudication is determined. This hearing was on September 17, 1917, and it is alleged by plaintiffs that the hearing was but a pretended hearing, lasting not more than three hours, and was on the motion or pleas in bar; that evidence was introduced, arguments of counsel being limited; that, at the time of the hearing, the pleadings, though voluminous, were not read to the court; that, on September 29, 1917, the decree had been prepared and signed by the judge, and was filed on said date without any knowledge on the part of plaintiffs or their attorneys.  The decree in the Carl case recites that defendants' exceptions to the plaintiffs' interrogatories were sustained; that defendants withdrew their motion to strike portions of the reply; that the pleas by the defendants of former adjudications in the Brown and Bills cases were sustained by the evidence; that the allegations of plaintiffs' reply in regard thereto were not sustained by the evidence; that the suit was brought by plaintiffs, for themselves and for all of the members of defendant society similarly situated, and involves questions of common interest, and of interest to all members of the society; that, because of the large number, it is impracticable to bring all of them before the court; that said decrees are *res adjudicata* as to every question raised by the petition, except as to the questions raised in the petition with reference to the expenditure of funds for the construction of an office building in Mason City, which questions were reserved for future consideration.  It is alleged and testified in the affidavit that at no time since the commencement of that action, either before, at, or

after the hearing on said plea in bar, were the defendants' exceptions to interrogatories, and the other motions, ever presented to or heard by any of the judges of said court, when plaintiffs or their attorneys were present; that none of plaintiffs or their attorneys were present when the decree was entered; that it was executed and filed without their knowledge. It is further alleged by appellees that defendants' exceptions to plaintiffs' interrogatories, and defendants' motion to strike parts of appellees' reply, were undisposed of, at and prior to the hearing on September 17, 1917, and that the case was not at issue on the date of the hearing aforesaid, nor on the date the decree was entered. The ruling thereon appears in the decree of September 29th, and after the hearing of September 17. Thereafter, and on October 10, 1917, the plaintiffs in that case filed therein what they call their motion for rehearing, wherein it is recited, among other things, that the decree was not submitted to plaintiffs, and it was not known to them that it had been entered until October 6, 1917; and that, on October 8th, one of plaintiffs' counsel examined the records, and found that the decree had been entered, and immediately thereafter began the preparation of his said motion. Said motion for rehearing also set up numerous other grounds, among them that the decree was not sustained by the evidence, was contrary to law, and so on. On October 22d, defendants filed a resistance to plaintiffs' said motion for rehearing in the Carl case, on the grounds, among others, that it was unauthorized; that it was not filed within the time provided by statute; and that plaintiffs' remedy, if any they had, is by appeal to the Supreme Court of Iowa. They denied all allegations of said motion, except that they admitted that, about October 6th, one of defendants' attorneys informed one of plaintiffs' attorneys that the decree had been entered. The so-called motion for rehearing was overruled on October 25, 1917. That case was appealed to this court, and was submitted, prior to the submission of this case, and has been dismissed at present sitting. For the purposes of the appeal in the instant case, we are not called upon to determine the merits of the claim made by appellees herein, as to whether there was really a trial or hearing of the Carl case. The affidavit as to what occurred on the trial in the district court, filed herein by plaintiffs' attorney, on the

motion to dissolve, is not denied.  We must keep in mind that, in the instant case, we are not passing upon the merits of that question or any other upon which there is an issue of fact, to be tried out on the hearing of the merits; and this is so, regardless of the result of the appeal in the Carl case here.  We may say in passing, without determining the merits, that some of the proceedings in all three of the prior cases were, to say the least, out of the ordinary.  These have all been before set out, and will not be now repeated.  The question now raised by appellees as to whether there was a fair hearing of the Carl case in the district court is not necessarily involved in the appeal of the Carl case.  That question was not involved in the trial on the merits. The matter occurred, or at least was not known or discovered by plaintiffs, according to their showing, until after the trial.  It is true that, in their so-called motion for rehearing, they attempted to raise some of these questions; but appellants objected that such a motion was unauthorized, and the trial court seems to have been of that opinion.  It may be that, had plaintiffs filed a regular application or motion to vacate the judgment for fraud, it could be done at any time; but such seems not to have been the form of the application.  If there is an issue of fact in reference thereto, as we think there is, the temporary injunction herein should be retained until the issue is tried out in the district court, provided appellees herein are entitled to attack the decrees in the Bills and Carl cases in the manner in which they have attempted to do it.  This, we take it, is the debatable point in the case, in so far as it relates to the question of former adjudication.

1.  We shall take up first, and determine, the question whether plaintiffs may attack the former judgments in the Bills and Carl cases in the manner here attempted; because, if all the matters complained of in the instant case have been adjudicated, or the plaintiffs may not raise that question herein, and there is no issue of fact in reference thereto, to be tried on the final hearing of this case, then this case is at an end, and in that event, the temporary injunction should not be continued.  But we are not called upon to pass upon the merits, nor upon the question whether there was fraud and collusion in procuring those decrees, nor whether there was fraud in the adoption of the amendments to the by-laws.

1. JUDGMENT:
what con-
stitutes direct
attack.

Appellants cite numerous cases holding that, ordinarily, the question may not be raised as here attempted. These cases are, for the most part, from other jurisdictions, with some Iowa cases.

*Mason v. Messenger,* 17 Iowa 261, cited by appellants, was an action to recover real estate. Plaintiff offered in evidence a certified copy of a partition decree of the real estate, which had been rendered in another county. Defendant objected, and offered to prove that the decree was obtained by fraud and collusion. The objection was sustained. This court said, after reviewing and distinguishing numerous cases, that:

"Neither of these cases, then, are in conflict with the general rule that the proceedings of a court having jurisdiction over the cause and the parties cannot be questioned collaterally, and are absolutely binding until set aside by the tribunal in which they occurred, or regularly reversed on error."

In *Smith v. Smith,* 22 Iowa 516, defendant offered to prove that the judgment against him in another county was "rendered upon a pretended cause of action which never justly subsisted, and was fraudulently procured." The offer was rejected, and we said:

"It was not competent to thus attack the judgment collaterally, when it was offered as an instrument of evidence only, in this case. If a judgment can be attacked for fraud in any case, it can only be by a direct proceeding."

To the same effect, see *Burlington & M. R. R. Co. v. Hall,* 37 Iowa 620, and *Commercial St. Bank v. Pierce,* 176 Iowa 722, 730. In the *Pierce* case, an entire stranger to the judgment, who was not bound, sought to set aside a judgment. In that case, at page 730, the court quoted with approval from another case, that:

"Judgment obtained in an action by ordinary proceedings shall not be annulled or modified by any order in an action by equitable proceedings, except for a defense which has arisen or been discovered since the judgment was rendered. * * * If the court, entering a judgment, has jurisdiction to render it, the enforcement of it will not afterwards be restrained merely because it is an improper or unjust judgment. The remedy of the aggrieved party is by appeal, or writ of error, or some other direct proceeding."

These are all the Iowa cases cited by appellants on this

proposition, except one, which will be referred to in a moment. In all of them, it will be observed that there was an attempt to attack collaterally, and not directly, the prior judgment: that is to say, they were attempting to retry, in a subsequent proceeding, the very questions that had been tried in the prior proceeding. In the instant case, the defendants pleaded the Bills and Carl cases as an adjudication, and in response to this, the plaintiffs alleged that there had been no former trial, for that such judgments were fraudulently and collusively obtained, and were therefore void. It appears to us that this is a direct, and not a collateral, attack. In other words, they were setting this matter up as a defense·to the defendants' plea. Plaintiffs allege in their pleadings that they did not discover the alleged fraud in the procuring of said judgments until about the time or shortly before they brought this action. If the prior judgments had been rendered without notice of the suit, and there was no jurisdiction, we think the plaintiffs could raise that question in response to the plea that such a judgment was an adjudication.

In *Mahoney v. State Ins. Co.*, 133 Iowa 570, at 577, 578, we said:

"Generally speaking, the fraud which renders a judgment void, as distinguished from voidable, goes to the method of acquiring jurisdiction, * * * or to the fraudulent creation of a cause of action. As a rule, these matters are equivalent to jurisdictional questions, and courts have generally so treated them. Where, however, the fraud in the trial of the case consists in the production of evidence which is claimed to have been false, or any other form of fraud against which the injured party might have protected himself at the [former] trial, it is not sufficient, according to the prevailing view in this country, to constitute a defense."

The only other Iowa case cited by appellant at this point is *Edmundson v. Independent Sch. Dist.*, 98 Iowa 639, 644. In that case, we said that it was clear that there was not sufficient evidence of fraud or collusion to justify a court in setting aside the order of affirmance in the Supreme Court. The court said further that the judgment would not be void unless made for a certain purpose named, and that it was an attempt to attack · the judgment collaterally, which could not be done. On the other

hand, plaintiffs contend that they are not bound, because the causes on which said decrees were rendered were not tried upon the merits; because the plaintiffs and defendants in said cases were not the same as in the instant case; because the issues were not the same; and because said decrees were procured by collusion and fraud. On this proposition they cite 15 Ruling Case Law 857, Section 331; *Kwentsky v. Sirovy,* 142 Iowa 385, 392; 23 Cyc. 1126, 1131, 1297; *Huskins v. McElroy,* 62 Iowa 508; 21 Am. & Eng. Encyc. of Law (1st Ed.) 131; *Pfiffner v. Krapfel,* 28 Iowa 27, at 34; *McCullough v. Connelly,* 137 Iowa 682, 686; *Whetstone v. Whetstone,* 31 Iowa 276, at 281, 283, 284; *Stewart Lbr. Co. v. Downs,* 142 Iowa 420; *Woodward v. Jackson,* 85 Iowa 432; *State v. Iowa Mut. Aid Assn.,* 59 Iowa 125, at 132; *Dunlap & Co. v. Cody,* 31 Iowa 260, 263; 23 Cyc. 1026, 1098, 1099, 1236, 1290; Code Sections 3464, 3466.

We shall cite some other cases. In *Williamson v. Williamson,* 179 Iowa 489, at 494, we said:

"A void judgment is no judgment at all, and no rights are acquired by virtue of its entry of record."

It was said at the same page that the method most commonly used to vacate a judgment was by motion in the court where the judgment was rendered, because this practice was simple, speedy, and effective. It is said in some of the cases, though perhaps in some of them it was not necessary to so say, that such was the only remedy; but there are many cases holding, and it seems to be generally held, that it is the general practice to permit an independent action in equity. 15 Ruling Case Law 738, 760, 855, 857; *De Louis v. Meek,* 2 G. Greene 55; *Ralston v. Lahee,* 8 Iowa 17; *Harshey v. Blackmarr,* 20 Iowa 161. Of course, this does not mean that a party may appeal from one court to another of equal jurisdiction to review errors or irregularities, or try the case over again, if there has really been a trial of the case on the merits. As said, the theory is that a judgment procured by fraud is no judgment at all. 15 Ruling Case Law 760, supra, states that fraud is the arch enemy of equity, and that a court of equity will relieve against a judgment obtained by imposition or fraud; and some of our own cases are cited to sustain the proposition. An execution issued under a void judgment is itself absolutely void, and its enforce-

ment may be enjoined. *Cooley v. Barker*, 122 Iowa 440. In *Mahoney v. State Ins. Co.*, 133 Iowa 570, at 576, we said:

"If the judgment be void for want of jurisdiction in the court pronouncing it, of either of the parties or of the subject-matter, it may, of course, be attacked at any time or in any proceedings whereby it is sought to be enforced; and the same may be true as to any fraud which renders it void, and not simply voidable."

In *Haddock v. Haddock*, 201 U. S. 562, at 627 (50 L. Ed. 867, at 893), it was said:

"The rule is well settled that, while a judgment or decree may sometimes be impeached for fraud, it can only be for a fraud extrinsic to the cause, as that the judgment was collusively obtained to defraud some other person; and that it cannot be impeached by either of the parties thereto by reason of false testimony given at the time or which must have been given to establish the plaintiffs' case * * *"

A definition of collateral attack, with the citation of many cases, will be found in 15 Ruling Case Law 838; and at page 839, direct attack is distinguished. At page 768, same volume, it is said that fraud is largely a conclusion of law, and that, in order to move a court of equity, it is generally necessary that the facts relied upon should be set forth in reasonable detail. *Stewart Lbr. Co. v. Downs*, supra, at page 424. If the unsuccessful party was, by fraud, prevented from having a trial, it will authorize the setting aside of a decree or judgment. *Kwentsky v. Sirovy*, supra.

We think the fraud alleged and relied upon by appellees is set out with sufficient detail, and this applies also to appellants' contention as to the fraud alleged by appellees in their amendment to petition, in regard to the method and purpose of securing the amendment to the by-laws. We refer to this at this point, so that it will not be necessary to refer to it later in the opinion. In this connection, we may as well say here that the amendment to the petition alleged that the defendant society and its officers and directors are oppressively, wrongfully, illegally, and fraudulently attempting to increase the rates of assessment under the policies of plaintiffs and those similarly situated, and illegally and fraudulently attempting to change the

terms and conditions thereof, without their consent; and, upon information and belief, they charge therein that such society and its officers have, for more than the past seven years, secretly, wrongfully, and illegally, conspired to injure, and have injured and threatened to injure, the plaintiffs and those similarly situated, in their rights as policyholders, in attempting to advance the rates of assessments, and to coerce and intimidate them to surrender their policies or certificates of insurance in the society, and to create, contrary to law, a lien against their respective policies, and to wrongfully confiscate the rights of these policyholders; that such facts became known to plaintiffs just prior to the bringing of this action. As said, the allegations of this amendment are not denied by appellants; therefore the allegations of the bill are not fully and specifically denied by the answer. We think that plaintiffs may attack the validity of the judgments relied upon by appellants as an adjudication, in the manner attempted. Whether, in fact, such fraud was practiced is a matter of proof, to be determined at the hearing on the merits.

2. What has been said in a prior division of the opinion applies, in part at least, to the fraud pleaded by plaintiffs in procuring the amendment to the by-laws. We do not now determine whether there was such fraud or not. Conceding, for the purposes of this appeal, but without deciding, that, under some circumstances, —that is, the application and the form of policy at the time a person becomes a member of such an association,— the by-laws may be amended, if fairly and honestly done, there might still be a question as to whether it could be done oppressively, without sufficient reason or necessity, and fraudulently. Such is the plaintiffs' claim, and it is so alleged by the amendment to the petition, which is not denied. Appellees are entitled to a trial on such fact issue, if it be found that the former decrees are fraudulent. So that it is not, as appellants contend, entirely a question of law whether, under the form of the application and the policy, the defendant society has a right to amend its by-laws. To so hold at this time, or to now hold that the alleged former adjudications were binding, would virtually decide the case now, and before the hearing on the merits. Plain-

2. INJUNCTION: vacation of temporary writ: balance-of-convenience rule.

tiffs are entitled to be heard on the merits on the fact questions. Under the rule in regard to balance of equities, plaintiffs ought not to be deprived of the advantage of a possible victory on the trial on the merits.

We are unable to see how appellants can be prejudiced by continuing the temporary injunction in force until such trial. We have held, in *Hayes v. Billings*, 69 Iowa 387, *Huskins v. McElroy*, 62 Iowa 508, and other cases, that where, as here, the answer does not deny all the allegations of the petition, but sets up an affirmative defense by way of avoidance, the injunction will not be dissolved on motion, but will be continued to the hearing. And in *Bankers Surety Co. v. Linder*, 156 Iowa 486, 500, it is said (citing cases) that, fraud being charged, the filing of an answer in denial was not sufficient ground for dissolving the writ. Under the record, but for the injunction, plaintiffs would be automatically suspended, and other consequences would follow, to their injury, which, we think, within the meaning of the law, is irreparable.

Other questions are argued. From the showing made, we think the temporary injunction was not improvidently made. Cases are cited by appellants, for the most part in regard to old line insurance policies, holding that the plaintiffs would have several remedies at law. Some other questions may be argued; but, since we have reached the conclusion that the temporary injunction should be continued until the final hearing on the merits as to the fact questions heretofore discussed, we deem it unnecessary to discuss the other questions.

We reach the conclusion that, under the entire record, we ought not to reverse and vacate the temporary injunction. The judgment is, therefore,—*Affirmed.*

EVANS and SALINGER, JJ., concur.

WEAVER, C. J., concurs in result.